RIO GRANDE RAILROAD COMPANY *v.* GOMILA.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF LOUISIANA.

No. 113.   Argued November 15, 1889. — Decided December 9, 1889.

Property of a debtor, brought within the custody of the Circuit Court of
the United States by seizure under process issued upon its judgment,
remains in its custody to be applied in satisfaction of its judgment, not-
withstanding the subsequent death of the debtor before the sale under
execution.

The jurisdiction of a court of the United States, once obtained over prop-
erty by its being brought within its custody, continues until the purpose
of the seizure is accomplished, and cannot be impaired or affected by any
legislation of the State, or by any proceedings subsequently commenced
in a state court.

Probate laws of a State which, upon the death of a party to a suit in a
Federal Court, withdraw his estate from the operation of the execution
laws of the State, and place it in the hands of his executor or adminis-
trator for the benefit of his creditors and distributees, do not apply
when, previous to the death of the debtor, his property has been seized
upon execution, and thus specifically appropriated to the satisfaction of
a judgment in that court.

. THIS case came from the Circuit Court of the United States
for the Eastern District of Louisiana. It arose out of the follow-
ing facts: On the 5th of June, 1885, the Rio Grande Railroad
Company, a corporation, recovered a judgment in that court
against a copartnership firm known as Gomila & Co., and
against its members, Anthony J. Gomila and Larned Torrey,
*in solido*, for $26,731.99, with interest from January 1, 1884.
Upon this judgment execution was issued under which certain
interests were attached, or seized, as it is termed in the laws of
Louisiana, namely, a claim upon which, in February, 1885,

judgment was recovered in that court in favor of Gomila &
Co. against Culliford & Clark, for $23,999.76, with interest at
the rate of five per cent per annum from June 30, 1883, from
which judgment an appeal was, at the time, pending in the
Supreme Court of the United States; also a claim and judg-
ment thereon in favor of Gomila & Co., against John T.
Milliken, rendered in a state court of Louisiana, on the 27th
of June, 1883, for $6200, with interest at the rate of eight
per cent per annum from February 27, 1883; and also a claim
made by Gomila & Co. against Kehlor Brothers, garnishees in
the suit of Gomila & Co. against Milliken.    Under this execu-
tion a parcel of real estate in the city of New Orleans was
also seized.    The property, except the real estate, was adver-
tised by the marshal of the district for sale.    Whilst thus ad-
vertised, and before the day of sale designated, Gomila, of the
firm of Gomila & Co., died.    The sale did not, therefore, take
place, and the representatives of Gomila were made parties to
the proceedings under the execution.    Subsequently a new
sale was advertised.    Before the day of sale arrived, the pub-
lic administrator, and, as such, dative testamentary executor of
Gomila, upon an affidavit that three-fourths of these assets be-
longed to and were inventoried as of the succession of the de-
ceased, and should be administered with his other assets in the
Probate Court of the Parish of Orleans, moved the Circuit Court
of the United States for an order directing the marshal of the
district to discontinue and withdraw the advertisement of sale,
and desist from making the sale as advertised, or offering for
sale the property seized.    To this motion the railroad company
appeared, and by way of exception and demurrer, pleaded, 1st,
that the executor could not proceed by motion if he had any
cause of complaint, but must proceed by an original bill in
equity; and, 2d, that the motion presented issues of law and
fact, which, if within the jurisdiction of the law side of the
court, should be tried in the ordinary way by a jury.    The com-
pany further stated that, if the demurrer and exception were
overruled, it desired to set up in answer to the motion the fact
that the claims were seized and advertised for sale before the
death of Gomila, and were in the custody and jurisdiction of

the court at the time of his death, and should not, therefore, be transferred to the Probate Court of the parish. Upon the hearing, which took place on the 5th of November, 1885, the court overruled the exception and demurrer, and ordered that the marshal discontinue and withdraw the advertisement of sale, which had been fixed for that day, and desist from making the sale until further order of the court, reserving to the parties all the rights not therein passed upon. This order merely operated to postpone the sale. Subsequently another rule was taken out by the executor upon the railroad company to show cause why the effects and property should not be delivered to him, burdened with any liens in its favor, which might have resulted from their seizure, and be received and held by him as executor for the purpose of administration, under the orders of the Probate Court. Upon the hearing which followed, the Circuit Court, in December, 1885, adjudged and decreed that the rule be made absolute, and that the property described in the motion, then in the possession and under the control of the marshal, be delivered to the executor as the officer of the Probate Court for the Parish of Orleans, the said property to pass into his possession burdened with any liens in favor of the plaintiff which might have resulted from its seizure, and that it be received and held by the executor for the purpose of administration under the orders of the Probate Court, and that the cost of the proceedings be paid by the Rio Grande Railroad Company. *Rio Grande Railway* v. *Gomila*, 28 Fed. Rep. 337.

To reverse this judgment the case was brought to this court on writ of error.

*Mr. George L. Bright* for plaintiff in error.

*Mr. Gus. A. Breaux* for defendant in error.

MR. JUSTICE FIELD, after stating the case as above, delivered the opinion of the court.

The question presented for our consideration is whether property of a debtor, brought within the custody of the Circuit

Court of the United States by seizure under process issued upon its judgment, remains in its custody to be applied in satisfaction of the judgment notwithstanding the subsequent death of the debtor, or is removed by such death from the jurisdiction of the Circuit Court and passes under the control of the Probate Court of the State, to be disposed of in the administration of the assets of the deceased. To this question we have no doubt the answer must be that the property remains in the custody of the Circuit Court of the United States, to be applied to the satisfaction of the judgment under which it was seized. The jurisdiction of a court of the United States once obtained over property by being brought within its custody continues until the purpose of the seizure is accomplished, and cannot be impaired or affected by any legislation of the State or by any proceedings subsequently commenced in a state court. This exemption of the authority of the courts of the United States from interference by legislative or judicial action of the States is essential to their independence and efficiency. If their jurisdiction could in any particular be invaded and impaired by such state action, it would be difficult to perceive any limit to which the invasion and impairment might not be extended. To sanction the doctrine for which the executor, appointed by the Probate Court of the Parish of Orleans, contends would be to subordinate the authority of the Federal courts in essential attributes to the regulation of the State, a position which is wholly inadmissible.

The principle declared in *Freeman* v. *Howe*, 24 How. 450, and in *Buck* v. *Colbath*, 3 Wall. 334, both of which have, from their importance, attracted special attention from the profession, in effect determines the question presented here.

In the first of these cases the marshal had levied a writ of attachment, issued from the Circuit Court of the United States for the District of Massachusetts, upon certain property which was subsequently taken from his possession by the sheriff of the county of Middlesex, in that State, under a writ of replevin issued from a state court, and the question presented was whether the sheriff was justified in thus taking the property from the marshal's possession, or whether the marshal had the

right to retain it. The court held that the property was, by its attachment under process of the Federal Court, brought within the custody of that court and under its jurisdiction; that it could not be taken from that custody by any tribunal of the State; and that if a conflict in the assertion of jurisdiction in such case arose, the determination of the question rested with the Federal Court, observing that "no government could maintain the administration or execution of its laws, civil or criminal, if the jurisdiction of its judicial tribunals were subject to the determination of another." p. 459.

In the second of the above cases — *Buck* v. *Colbath*, 3 Wall. 334 — this court referred to the decision in *Freeman* v. *Howe*, and, after stating that, when first announced, it had taken the profession generally by surprise, said that the court was clearly satisfied with the principle upon which the decision was founded; "a principle," it added, "which is essential to the dignity and just authority of every court, and to the comity which should regulate the relations between all courts of concurrent jurisdiction. That principle is, that, whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises." p. 341. The doctrine of *Freeman* v. *Howe* was thus reaffirmed, with a statement of the limitation to which, in its application, it was subject, by allowing suits against officers and others for seizing the property of strangers, which did not invade the custody of the court over the property. With the property in custody, so long as it continues, no other tribunal can interfere, though, but for such custody, possession of it might be taken under process from state courts. *Covell* v. *Heyman*, 111 U. S. 176.

In *Riggs* v. *Johnson County*, 6 Wall. 166, which came from the Circuit Court for the District of Iowa, and was before us at December term, 1867, this doctrine finds illustration. There the plaintiff had obtained judgment in the Circuit Court against

the county upon certain of its bonds. Execution, issued upon the judgment, was returned unsatisfied. Thereupon he applied to the Circuit Court for a mandamus upon the supervisors of the county to compel the levy of a tax for the payment of the judgment. An alternative writ was issued commanding the supervisors to assess the tax or show cause to the contrary on a day designated. The supervisors appeared on the return day and alleged that they had been enjoined by proceedings in a state court from assessing a tax for that purpose, and that they could not do so without being guilty of contempt and becoming liable to punishment. To this return the plaintiff demurred on several grounds; and, among others, that the state court had no jurisdiction, power or authority to prevent him from using the process of the Circuit Court to collect its judgment; and that the decree for an injunction rendered in the state court was no bar to his application for relief. The court overruled the demurrer, and decided that the return was sufficient. Judgment was thereupon rendered for the supervisors, and the plaintiff brought the case to this court by writ of error. Here the judgment was reversed and the cause remanded with directions to sustain the demurrer, and take further proceedings in accordance with the opinion of the court. In considering the grounds of the demurrer, this court held that the jurisdiction of a court is not exhausted by the rendition of judgment, but continues until that judgment is satisfied; that process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment; observing that the judicial power would otherwise be incomplete and entirely inadequate to the purposes for which it is conferred by the constitution; that mandamus is an appropriate remedy to compel the levy of a tax to pay a debt contracted by a municipal corporation, where judgment has been recovered for the debt, and execution thereon has been returned unsatisfied; and that state laws cannot control its process. "Repeated decisions of this court," was its language, "have also determined that state laws, whether general or enacted for the particular case, cannot in any manner limit or affect the operation of the process or proceedings in the Federal courts." p. 195. And it concluded

its consideration of the subject by holding that the injunction of the state court was "inoperative to control or in any manner to affect the process or proceedings of a Circuit Court, not on account of any paramount jurisdiction in the latter courts, but because, in their sphere of action, Circuit Courts are wholly independent of the state tribunals." p. 196.

It is earnestly contended that this doctrine cannot apply where the property brought under the control of the Federal Court has by the subsequent death of the debtor become, under the statute of Louisiana, the subject of administration in the Probate Courts of the State. The doctrine as declared in the cases cited does not admit of any exception to the jurisdiction of the Circuit Court of the United States in such cases. Indeed, if an exception could be made in cases in the Probate Court, it might be made in other cases. Special jurisdiction in particular classes of cases might be authorized, so as to take a large portion of subjects from the jurisdiction of the Federal courts. When property is seized to satisfy a money judgment of the United States Court, and thus brought within its custody, it is appropriated to pay that judgment, and the court cannot surrender its jurisdiction over the property until it is applied to that judgment, or that judgment is otherwise satisfied. Only the part remaining after such appropriation goes, upon the death of the debtor, into the Probate Court as his assets. All proceedings under a levy of execution have relation back to the time of the seizure of the property. *Freeman* v. *Dawson*, 110 U. S. 264, 270.

We do not question the general doctrine laid down in *Yonley* v. *Lavender*, 21 Wall. 276, 279, 280, to the effect that the administration laws of a State are not merely rules of practice for the courts, but laws limiting the rights of the parties, and will be observed by the Federal courts in the enforcement of individual rights, and that those laws upon the death of a party withdraw the estate of the deceased from the operation of the execution laws of the State, and place them in the hands of his executor or administrator for the benefit of his creditors and distributees. But that doctrine only applies where the property has not been, previous to the death of the debtor,

taken into custody by the Federal Court upon its process, and thus specifically appropriated to the satisfaction of such judgment. In this case, had Gomila died before the property in question had been seized upon process issued upon a judgment against him, the doctrine of the case cited might have been applicable. We do not recall any case now where the Federal courts have not paid respect to the principle that all debts to be paid out of the decedent's estate are to be established in the court to which the law of his domicile has confided the general administration of estates, and that judgments against the deceased, unaccompanied by a seizure of property for their satisfaction, stand in the same position as other claims against his estate, and are to be paid in like manner. The jurisdiction of chancery to enforce the equitable rights of a non-resident creditor in the case of maladministration or non-administration of the estate of a decedent, stands upon a different principle, (*Payne* v. *Hook*, 7 Wall. 425,) the rule prevailing, as stated in *Hyde* v. *Stone*, 20 How. 170, 175, that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the State which prescribe the modes of redress in their courts or which regulate the distribution of their judicial power.

Nor is there anything in the doctrine of the exclusive jurisdiction of the Federal Court to dispose of the property in its custody without any intervention of the Probate Court, until its judgment is satisfied, that in any way trenches upon that doctrine equally well established, that where a state and a Federal court have concurrent jurisdiction over the same subject matter, that court which first obtains jurisdiction will retain it to the end of the controversy, either to the exclusion of the other, or to its exclusion so far as to render the latter's decision subordinate to the other; a doctrine which, with some exceptions, is recognized both in Federal and state courts. *Wallace* v. *McConnell*, 13 Pet. 136, 143; *Taylor* v. *Taintor*, 16 Wall. 366, 370.

*Wallace* v. *McConnell*, 13 Pet. 136, 143, was a case brought in the District Court of the United States for the District of Alabama, exercising the power of a Circuit Court, upon the

promissory note of the defendant for $4880. The defendant appeared and pleaded payment and satisfaction, and, issue being joined, the case was continued until the succeeding term. The defendant then interposed a plea of *puis darrien continuance*, alleging that, as to $4204 of the sum, the plaintiff ought not to maintain his action, because that sum had been attached in proceedings commenced against him under the attachment law of the State in which he was summoned as garnishee. In those proceedings he had admitted his indebtedness beyond a certain payment made, and the state court gave judgment against him for the balance. To this plea the plaintiff demurred, and the demurrer was sustained. The case being taken to this court, it was contended that the proceedings under the attachment law of Alabama were sufficient to bar the action as to the amount attached, and that, therefore, the demurrer ought to have been overruled. But the court said: "The plea shows that the proceedings on the attachment were instituted after the commencement of this suit. The jurisdiction of the District Court of the United States, and the right of the plaintiff to prosecute his suit in that court having attached, that right could not be arrested or taken away by any proceedings in another court. This would produce a collision in the jurisdiction of courts that would extremely embarrass the administration of justice."

From the views expressed it follows, that the court below erred in ordering the marshal to discontinue the advertisement for the sale of the property seized, and from proceeding with its sale, and directing its delivery over to the executor of the deceased, Gomila, for purposes of administration under the orders of the Probate Court of the Parish of Orleans. Only so much of the property, or of its proceeds, as may remain after the satisfaction of the judgment under which the property was seized, can be transferred to such executor. The judgment of the court below must, therefore, be

*Reversed, and the cause remanded with directions to discharge the rule; and it is so ordered.*