## CENTRAL NAT. BANK OF BOSTON *v.* HAZARD *et al.*

### (*Circuit Court, N. D. New York.* February 26, 1892.)

1. **STATE AND FEDERAL COURTS—CONFLICT OF JURISDICTION—INJUNCTION.**
   A state court has no authority to enjoin the proceedings of a federal court, or of the parties thereto, in a suit in which the federal court has first acquired jurisdiction of the controversy and the *res.*

2. **SAME.**
   When a federal court has ordered the sale of a railroad, and its officer has advertised the same for sale, that court has complete dominion thereof, so as to exclude all interference by a state court.

3. **SAME—VACATING DECREE.**
   A proceeding in a state court to set aside a former decree thereof for fraud in its procurement is an original suit, and does not revive the dominion exercised in the former suit over the *res,* so as to exclude the jurisdiction of a federal court which has attached in the mean time.

4. **COURTS—JURISDICTION IN REM—SALE OF PROPERTY.**
   The dominion of a court over a railroad sold by its decree entirely ceases upon the conveyance thereof to the purchasers.

In Equity. Suit by the Central National Bank of Boston, in its own behalf and in behalf of all other certificate holders, against Rowland N. Hazard, William Foster, Jr., and others, to declare and enforce the lien of certain receiver's certificates against the Lebanon Springs Railroad Company. Heard on petition for an order directing an officer of the court to proceed with a sale of the railroad property, in accordance with a decree heretofore entered. Granted.

*Esek Cowen,* for petitioner.

*E. W. Paige,* for defendants.

WALLACE, Circuit Judge. The petitioner asks the court to set in motion one of its officers *pro hac vice,* who, by a decree made on the 24th day of March, 1887, (30 Fed. Rep. 484,) was directed to sell at public auction, after giving due notice of the time and place of sale, according to law and the practice of this court, certain real and personal property, consisting of the railroad, rolling stock, etc., which formerly belonged to the Lebanon Springs Railroad Company. The petitioner invokes the action of the court because a decree has been made by the supreme court of the state of New York in a suit brought subsequent to the rendition of the decree of this court, which, among other things, perpetually enjoins and restrains the parties in this suit from proceeding with the sale of the property under the decree of this court. The petitioner was not a

formal party to the suit in the state court, and,.as the suit in this court was prosecuted in his behalf, as one of those similarly situated with the complainant, he has a *status* which enables him to intervene, as is supposed, without violating the injunction of the state court. If there were any reason to impute contumacy to the officer who has halted in the performance of the duty imposed upon him by the court, the appropriate application would be one for his removal; but it is apparent that his conduct is influenced by a desire to respect the injunction of a state court, which in spirit, though not in terms, prohibits him from proceeding with the sale until the instructions of this court have been obtained.

The case is this: Prior to the year 1880, the Lebanon Springs Railroad Company had mortgaged its property, to secure bonds to the amount of $2,000,000, to the Union Trust Company, as trustee, and that·mortgage had been foreclosed and the property sold, and, by mesne conveyances from the purchaser, the title to the property had been acquired by the New York, Boston & Montreal Railway Company. In the year 1880 an action was brought in the supreme court of the state of New York by one Sackett, who owned some.of the mortgage bonds, in his own behalf, and that of all other owners of the bonds, the object of which was, in substance, to obtain an adjudication that the equitable title to the property was still in the bondholders, and a decree for a sale· of the road for the benefit of the bondholders. During the pendency. of the action the court appointed a receiver, and authorized the receiver to issue certificates to the amount of $350,000, to constitute a first lien upon the property. That action resulted in a decree entered in January, 1885, adjudging that the title to the railroad property was in the original bondholders, and ordering the road to be sold for their benefit, subject to the principal and accrued interest upon the receiver's certificates. A sale was made pursuant to that decree, and upon the sale Hazard & Foster became the purchasers. By the terms of the purchase Hazard & Foster assumed and agreed to pay the receiver's certificates, but after acquiring a deed they made default. The complainant in the present suit was the owner of $250,000 of the certificates, and in April, 1886, brought this suit, in behalf of itself and all the other certificate holders, to obtain a decree declaring the certificates to be a lien upon the property, and to enforce payment by a sale of the property and a personal judgment against Hazard & Foster for any deficiency. Hazard & Foster contested the suit, but it resulted in a decree adjudging the certificates to be a lien, ordering a sale of the property, and requiring Hazard & Foster to pay to the complainant, and the other holders of the certificates, any deficiency remaining unsatisfied after the sale of the property. The decree also reserved leave to the complainant and to the other certificate holders to apply to the court at any time for the appointment of a receiver to take possession of the property, and keep it until the sale. The property was duly advertised for sale pursuant to this decree, but the sale was adjourned from time to time until late in the year 1890, when the suit was brought by Stevens and others in the supreme court of the state of New York, in which the injunction was granted which

has given rise to this application. Stevens was the owner of some of the bonds. The object of his suit was, in substance, to impeach the decree in the Sackett suit for fraud, and to obtain a strict foreclosure of the mortgage made by the Lebanon Springs Railroad Company. The theory of the action was that the Sackett suit had been prosecuted for the benefit of a portion of the bondholders, and in fraud of the interests of others. That suit resulted in a decree, by which it was adjudged that the Sackett suit was fraudulently conducted as against certain of the bondholders whom he purported to represent, and solely in the interest of bondholders representing only about $1,200,000 of the $2,000,000 of bonds. The decree vacated the judgment in the Sackett suit, ordered a sale of the property, declared that the owners of the receiver's certificates were entitled to only the distributive share of the proceeds of the sale as might be applicable to the bonds which were actually represented in the Sackett suit, and ordered the perpetual injunction which has been referred to.

No federal court has ever recognized the authority of a state court to enjoin its proceedings, or to enjoin parties from proceeding, in a suit in which the federal court has first acquired the jurisdiction of the controversy and the *res*, but such authority has been uniformly denied by the federal courts. *McKim* v. *Voorhies*, 7 Cranch, 279; *Riggs* v. *Johnson Co.*, 6 Wall. 166; *Mayor* v. *Lord*, 9 Wall. 409; *Supervisors* v. *Durant*, Id. 415; *Amy* v. *Supervisors*, 11 Wall. 136. "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and, although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues." *Covell* v. *Heyman*, 111 U. S. 183, 4 Sup. Ct. Rep. 355. These principles were recognized and enforced by one of the federal courts in a case which is very much in point. In *Fox* v. *Railroad Co.*, 2 Abb. (U. S.) 151, a court of the state of Pennsylvania had proceeded to a decree in a suit to foreclose a mortgage executed by the railroad company, and after the decree, and pending a sale ordered by the decree, executions were issued upon judgments rendered by the United States circuit court, and levies were made upon the mortgaged property. The federal court set aside the levy, holding that the court of Pennsylvania having by its decrees and authorized officers taken judicial control of the prop-

erty, and ordered its sale, the property could not be taken in execution by process from any other jurisdiction.

In the present case, after the decree was made by this court ordering the property to be sold by its officer, and the officer had proceeded towards executing the decree by advertising the property for sale, the property was under the dominion of this court as effectually as though it had been seized upon an execution. And it is equally clear that after the sale had taken place under the decree in the Sackett suit, and the property had been conveyed to Hazard & Foster, the property passed from the dominion which the state court had previously exercised over it. The Stevens suit was an original and independent proceeding, not a supplementary proceeding connected with the Sackett suit. As was said in *Barrow* v. *Hunton*, 99 U. S. 80:

"If the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding; * * * a new case arising upon new facts, although having relation to the validity of an actual judgment or decree."

The case, therefore, is one for the application of the rule that the jurisdiction of a court of the United States once obtained over property by its being brought within its custody continues until the purpose of the suit is accomplished, and cannot be impaired or affected by any proceedings subsequently commenced in a state court. *Railroad Co.* v. *Gomila*, 132 U. S. 478, 10 Sup. Ct. Rep. 155.

It is not necessary to consider whether a state court, in the exercise of equity jurisdiction, may not annul the judgment of a federal court for fraud, and, as an incident to relief, enjoin the enforcement of the judgment to the extent necessary to do justice. *Johnson* v. *Waters*, 111 U. S. 640, 4 Sup. Ct. Rep. 619. In the present case the state court has not assumed to disturb the decree of this court. It has adjudged that the lien of the certificate holders has no priority over that of the bondholders, but is one to be satisfied *pari passu* with theirs; and by its decree it subordinates the title which will be acquired under the sale by this court to the title which will be acquired by a sale under its own decree. The decree of this court finally determines the rights of the parties to the suit as between themselves. Manifestly the decree of the state court does not disturb the right of the certificate holders to enforce the payment of their certificates against Hazard & Foster by a sale of their property and a personal judgment for the deficiency. A personal judgment cannot be obtained under the present decree without a sale of the property, in order to ascertain the deficiency and fix the amount recoverable. Such a sale cannot injuriously affect the property interests which are recognized and protected by the decree of the state court. A sale under its decree will extinguish all subordinate titles, good as well as bad.

It would be rank injustice to the complainant and the other certificate holders to postpone the enforcement of their demands against Hazard & Foster to await the result of the litigation in the state court, which seems likely to be a protracted one. The order applied for is therefore granted.