No. 88-181

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

IN THE MATTER OF THE ESTATE OF
JEFFREY CONNOR WILHELM,
Deceased.

_____

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Sullivan & Baldassin; John K. Tabaracci, Missoula,
                Montana

        For Respondent:

                Worden, Thane & Haines; Patrick D. Dougherty, Missoula,
                Montana

_____

                          Submitted on Briefs:   July 8, 1988

                              Decided:   August 11, 1988

Filed:  AUG 1 1 1988

                    *Ethel M. Harrison*
_____
                          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case, we are confronted with an aspect of the continuing interaction of federal and state laws, procedure, and authority in our complex federal system. Following entry of a default judgment against Jeffrey Wilhelm in the United States District Court for the Southern District of New York, Credit Alliance Corporation registered the same and began execution proceedings. Those efforts to execute on the judgment have resulted in actions before the United States District Court for the Montana District, the United States Bankruptcy Court, the Alaska Superior Court, and the District Court of the Fourth Judicial District, Missoula County.

Credit Alliance Corporation appeals from the judgment of the District Court of the Fourth Judicial District, Missoula County, which determined that certain real property located within Missoula County was subject to the family protection allowances of § 72-2-801 et seq., MCA, and thus exempt from execution pursuant to Credit Alliance Corporation's judgment lien. We affirm.

The issues before the Court are:

1. Did the District Court lack jurisdiction to hold that the real property was subject to Montana's Homestead, Exempt Property and Family Allowances, thus invalidating Credit Alliance Corporation's execution?

2. Did the District Court err in holding that the Homestead, Exempt Property, and Family Allowances were superior to a judgment lien on the decedent's real property?

On April 23, 1982, Credit Alliance Corporation obtained a default judgment against Jeffrey Wilhelm, a resident of Alaska, from the United States District Court for the

Southern District of New York in the amount of $43,115.74 plus interest based on the underlying claim of Wilhelm's failure to repay a promissory note. The judgment was registered in the United States District Court for the District of Montana the same day and subsequently docketed upon the records of the Missoula County Clerk of Court on October 26, 1982.

On May 8, 1986, Credit Alliance Corporation caused a Writ of Execution to be issued by the United States District Court of Montana and delivered to the United States Marshal. The United States Marshal scheduled for sale on July 8, 1986, certain real and personal property of Jeffrey C. Wilhelm, consisting of a 1.9 acre parcel of land in Missoula County and a 1969 Buddy Mobile Home. Jeffrey C. Wilhelm filed for bankruptcy in Alaska, his state of residence, on July 3, 1986 and the automatic stay pursuant to 11 U.S.C § 362 prevents the United States Marshal's sale from proceeding. Thereafter, on July 11, 1986, the Writ of Execution was returned by the Marshal unsatisfied.

On October 21, 1986, Jeffrey Wilhelm died in an automobile accident near Palmer, Alaska. At that time, he was seeking to have the default judgment overturned.

Shortly after Wilhelm's death, probate proceedings were initiated in the Third Judicial District of the State of Alaska, Wilhelm's domicile. On January 13, 1987, Credit Alliance Corporation filed a creditor's claim against the estate in the amount of the judgment plus interest, costs, and attorney's fees.

The bankruptcy proceedings were subsequently dismissed on February 6, 1987, dissolving the temporary stay. On June 20, 1987, Credit Alliance Corporation caused a new Writ of Execution to be issued and delivered to the United States Marshal. On July 28, 1987, the U.S. Marshal levied upon real

and personal property of the estate of Jeffrey C. Wilhelm located in Missoula County, Montana. Pursuant to that levy, a 1969 Buddy Mobile Home and Jeffrey Wilhelm's purchaser's interest in a Contract for Deed for 20.18 acres of land in Missoula County were sold at U.S. Marshal's sale on September 9, 1987. A subsequent U.S. Marshal's sale was held on November 18, 1987 for 1.9 acres of land in Missoula County. The properties at both sales were purchased by the Credit Alliance Corporation which was put on notice at the time of the sales of the surviving spouse's claim for exempt probate allowances against those properties.

In the meantime, the Alaska probate proceedings were continuing and ancillary proceedings were initiated in Missoula County, on August 27, 1987. On September 17, 1987, the Alaska Superior Court determined that Wilhelm's estate was inadequate to satisfy the Alaska family protection allowances and ordered that the real and personal property of the Montana estate be used to satisfy the same. The property in the Montana estate is valued at $29,000 and does not exceed the exempt probate allowances as ordered by the Alaska Court.

A hearing was subsequently held before the state District Court of the Fourth Judicial District for the County of Missoula, for the purpose of determining whether the family protection allowances were superior to Credit Alliance Corporation's judgment lien. On January 29, 1988 the state District Court issued an order declaring that the family protection allowances were allowed, were exempt from and had priority over the creditor's claim of Credit Alliance Corporation, and were superior to Credit Alliance Corporation's judgment lien. The order also declared the prior execution sales of Credit Alliance Corporation void.

During the course of these proceedings, Credit Alliance Corporation had also filed a quiet title action concerning the property sold pursuant to the execution sale. The estate of Wilhelm answered by motion to dismiss. On July 20, 1988, the United States District Court for the District of Montana granted Wilhelm's motion to dismiss based on the state's exclusive jurisdiction over probate matters.

## JURISDICTION

Credit Alliance Corporation, in effect, argues that the District Court lacked jurisdiction in two instances. See Credit Alliance Corporation v. Wilhelm, et al (D. Mont. 1988), No. 87-218, slip op. at 3. First, Credit Alliance Corporation contends that the District Court lacked jurisdiction to determine the rights of the parties to the property at issue because such property was in the custody of the U.S. District Court and thus subject to the exclusive jurisdiction of the federal court. Secondly, it is argued that the District Court lacked the authority to invalidate the federal execution sale. Upon examination, we find any error to be moot.

Courts are the creatures of law and as such have no authority outside that granted by law. Jurisdiction is the power, granted by law, of a court to entertain, hear, and determine a particular case or matter. State ex rel. Bennett v. Bonner (1950), 123 Mont. 414, 425, 214 P.2d 747. It is a prerequisite to judicial intervention or decision; in its absence, the actions of a court are without effect. Wilson v. Thelen (1940), 110 Mont. 305, 100 P.2d 923.

Art. VII of the 1972 Montana Constitution is the wellhead from which judicial authority flows. Pursuant to Art. VII, § 4, district courts are vested with original jurisdiction over "all civil matters and cases at law and in equity . . . and such additional jurisdiction as may be

delegated by the laws of the United States or the state of Montana." Clearly, the broad sweep of this provision encompasses matters of probate.

Section 72-3-111, MCA, provides that "the district court has exclusive jurisdiction of all probate matters." In addition, the district courts of this state are vested with "the full power to make orders, judgments, and decrees and take all other action necessary and proper" to effectuate the court's authority. Section 72-1-202(2), MCA. The conclusion is thus inescapable that the state District Court properly had jurisdiction over the assets of the estate. The issue therefore becomes one of federal preemption.

By virtue of the Supremacy Clause, state jurisdiction is subject to federal preemption. Rio Grande Railroad Co. v. Gomilu (1889), 132 U.S. 478, 10 S.Ct. 155, 33 L.Ed 400. However, the United States Supreme Court has long recognized the primacy of state courts over probate matters. See Yonley v. Lavender (1874), 88 U.S. 276, 22 L.Ed 536. Although the federal court retains jurisdiction over claims impacting the estate, the court cannot seize and control property which is in the possession of the state probate court. Waterman v. Canal-Louisiana Bank & Trust Company (1909), 215 U.S. 33, 44, 30 S.Ct. 10, 12, 54 L.Ed 80, 84. The assets of the estate remain subject to exclusive state control. As the Waterman court noted, citing Byers v. McAuley (1893), 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed.2d 867:

> A citizen of another state may establish a debt against the estate. (Citation omitted.) But the debt thus established must take its place and share of the estate as administered by the probate court; and it cannot be enforced by process directly against the property of the decedent. . . (Emphasis added.)

215 U.S. at 44, 30 S.Ct at 12, 54 L.Ed at 84.

It is thus clear that while "a federal court may exercise jurisdiction and enter a judgment binding on a claimant and the administrator of an estate, the federal court may not exercise dominion over assets in the estate which by state law are subject to the exclusive possession of the state probate court." Nichols v. Marshall (10th Cir. 1974), 491 F.2d 177, 181.

Similarly, the federal courts have also demonstrated a reluctance to intrude upon the state province of family protection. In United States v. Yazell (1966), 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404, the Supreme Court was asked to uphold the Small Business Administration's attempt to levy on property pursuant to loan default in violation of Texas family law. Noting the absence of a federal interest sufficient to override state law concerning family and family-property arrangements, the court held:

> We decide only that this Court, in the absence of specific congressional action, should not decree in this situation that implementation of federal interests requires overriding the particular state rule involved here. Both theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements. They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.
>
> Each State has its complex of family and family-property arrangements. There is presented in this case no reason for breaching them.

382 U.S. at 352, 86 S.Ct. at 507, 15 L.Ed.2d at 410. See also Fink v. O'Neil (1882), 106 U.S. 272, 1 S.Ct. 325, 27

- 7 -

L.Ed 196 (federal court cannot order execution on land protected by state homestead exemption.)

In the instant case, the issuance of the writ of execution by the court clerk following Jeffrey Wilhelm's death infringed upon the state's jurisdiction to determine matters of probate. Upon Jeffrey Wilhelm's death, jurisdiction over the assets of the estate was vested solely in the state court. See Waterman, supra. Credit Alliance Corporation's subsequent attempt to execute on the assets of the estate pursuant to a federal writ of execution violated the state's prerogative and the prohibition against execution during the pendency of probate in contravention of § 72-3-813, MCA. It also contravened the state's primacy in the area of family protection. See discussion, infra.

When confronted with an analogous situation, the United States Court of Appeals for the First Circuit determined that a writ issued solely on the authority of a federal court clerk in violation of state law is without effect. Gabovitch v. Lundy (1st Cir. 1978), 584 F.2d 559, 561. However, neither this Court nor the District Court has the authority to invalidate federal action. Rio Grande Railroad Co. v. Gomily (1889), 132 U.S. 478, 10 S.Ct. 155, 33 L.Ed 400. That task remains solely within the discretion of the federal courts. In this case, we conclude the federal court has so acted.

In Credit Alliance Corporation's related quiet title action before the federal District Court, Credit Alliance Corporation claimed the right to quiet title to the property pursuant to the property's purchase at the execution sale. The federal court disagreed. Recognizing the exclusive jurisdiction of state courts in probate matters, the federal court determined that jurisdiction over the property was vested in the state court upon Jeffrey Wilhelm's death, an

- 8 -

event which occurred prior to the execution. Credit Alliance Corporation v. Wilhelm, et al. (D. Mont. 1988), (No. 87-218) slip op. at 3. Consequently, the federal court lacked jurisdiction to determine title to the property. Slip op. at 4.

On its face, the federal court's determination that the assets of the estate of Jeffrey Wilhelm became subject to state court jurisdiction upon his death, a time prior to the execution, clearly invalidates the writ. Although the District Court lacked jurisdiction to invalidate the federal writ of execution, it nevertheless had the authority to determine title to the property. We must therefore conclude that the issue is moot.

## PRIORITY OF CLAIMS

Judgment liens are controlled by Title 25 of the Montana Code Annotated. Section 71-3-1504, MCA. Pursuant to § 25-9-301(2), MCA, a judgment constitutes a lien against "all real property of the judgment debtor not exempt from execution . . ." (Emphasis added). In the instant case, Credit Alliance Corporation contends that the property at issue is not exempt from execution. We disagree.

Judgment liens are designed to assist creditors to collect debts due and owing. Generally, the death of a judgment creditor does not affect the vitality of a judgment lien. Section 25-13-103(2), MCA. However, a judgment lien is solely a creature of statute and completely dependent upon the authorizing statute for the terms and limits of its existence. McMillan v. Davenport (1911), 44 Mont. 23, 31, 118 P. 756, 758, 759. It is a general lien on all real property owned by the debtor but is not a specific lien on any particular piece of property. Vaughn v. Schmalsle (1890), 10 Mont. 186, 194, 25 P. 102, 103. As such, a lien does not create title to the property nor does it create an

- 9 -

estate or interest therein. See, Martin v. Dennett (Utah 1981), 626 P.2d 473, 475. Rather, the lien merely creates a right of seizure of the debtor's interest as defined and limited by the terms of the authorizing statute. See, Hannah v. Martinson (Mont., No. 88-60, Decided July 7, 1988), 45 St.Rep. 1203.

The family protection and allowances granted pursuant to statute states public policy. The goal is to ensure that the family of a decedent is not left destitute and dependent upon the public charity. Estate of Lawson (Mont. 1986), 721 P.2d 760, 762, 43 St.Rep. 1261, 1263. Unlike judgment liens, the family protection allowances grant the family of the decedent a vested interest in property. The right exists apart from, and in addition to, any rights flowing from the estate. Lawson, 721 P.2d at 762, 43 St.Rep. at 1263; Matter of Merkel's Estate (Mont. 1980), 618 P.2d 872, 37 St.Rep. 1782. In addition, the right is to be liberally construed in order to effectuate its purpose. Matter of Hutchinson's Estate (Alaska 1978), 577 P.2d 1074, 1076. See also, Lawson, supra (nature of family allowances preclude defenses of offset, satisfaction, payment or abandonment).

In the instant case, we are confronted with a statutory conflict between the competing interests of the decedent's family and creditors due to the insolvency of the estate. In such situations, the applicable statutes cannot be viewed in a vacuum. Rather, the statutes should be read together and, if possible, harmonized so as to give effect to each of them. Shuman v. Bestrom (Mont. 1985), 693 P.2d 536, 42 St.Rep. 54.

Where there are ancillary proceedings in this state, the family of the decedent is entitled to family exemptions and allowances as determined by the law of the decedent's domicile--Alaska. See § 72-3-821, MCA. Pursuant to Alaska law, Wilhelm's family is entitled to a homestead allowance,

- 10 -

exempt property allowance and family allowance totaling $52,000. See, AS §§ 13.11.125, 130 and 135. However, the insolvency of the Alaska estate has left $48,253.74 of the amount unsatisfied.

Both Alaska and Montana law provide that the homestead allowance is exempt from and has priority over all claims against the estate. See AS § 13.11.125, AS and § 72-2-801(2), MCA. A similar priority has been granted under the family allowance and exempt property provisions in order to provide the dependents of the decedent with the means to provide themselves with the basic necessities of life. See AS §§ 13.11.130, 13.11.135, AS and §§ 72-2-802(2), 72-2-803(2), MCA. In addition, both probate codes recognize the continuing nature of a judgment lien. See AS § 13.16.515, and § 72-3-812, MCA.

However, unlike Alaska, this Court has not been confronted with a similar dispute. In <u>Hutchinson</u>, supra, the Alaska court was asked to determine the priorities between the family protection allowances and administrative expenses. Although applying an Alaska statute, the court's examination of the rationale underlying the priority given family protection allowances is nonetheless sound.

> Those who dealt with the decedent did so with knowledge of the existence of such provisions for the protection of himself and his family, and only upon the margin of his credit over such exemptions. It is therefore in no sense unfair to them that such provisions be continued in effect after his death, for the benefit of his family. The public welfare, moreover, is largely involved. If indigent widows and orphans were to be left wholly without means of support, a great burden would be cast upon society and they would frequently be left to suffer for faults which they were without power or capacity to oppose. It is repeatedly and soundly declared, accordingly, that the statutory rights of the family of a decedent to maintenance and support and to such protection against

- 11 -

> deprivation of the bare necessities of life as is accorded by the exemption and homestead laws and continued for their benefit, although in derogation of the common law, are strongly favored and are to be liberally construed in view of their humanitarian purpose.

577 P.2d at 1076. We believe the same reasoning to be equally applicable here.

While the code indicates that a judgment lien survives the death of a debtor (§§ 25-13-103(2), 72-3-812, MCA), it does not provide that the judgment creditor's interest is inviolate. The creditor was aware of the family protection laws at the time he engaged in business with the debtor and knew that his remedy for breach might be subject to the same. Unlike a mortgage, a judgment lien does not create a vested right in a specific piece of property. Short of such a right, the existence of the lien should not prevent the property to which the lien attached from being marshalled as assets of the estate. See, Martin, 626 P.2d at 476; see also In Re Donner's Estate (Fla. App. 1978), 364 So.2d 753 (lien cannot be imposed upon the surviving spouse's dower); Thomas v. Bailey (Miss. 1979), 375 So.2d 1049 (widow's allowance is superior to judgment lien).

We therefore conclude that although the judgment lien attached prior to Wilhelm's death, the lien was extinguished upon the exercise of the Wilhelm family's statutory rights granted pursuant to the family protection allowances. At that time, the property was no longer non-exempt within the meaning of § 25-9-301(2), MCA.

It is not necessary now to discuss the issue advanced by the estate that when Credit Alliance Corporation filed a creditor's claim in the Alaska probate proceedings, it waived its judgment lien upon specific probate property.

The judgment is affirmed.

_____
John C. Shelby
              Justice

We Concur:

_____
R. A. Turnage
              Chief Justice

_____
John Conway Harrison

_____
William E. Hunt Sr.

_____
R. C. McDonough
              Justices

- 13 -