FILED

02/26/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0012

CLERK OF DISTRICT COURT
TINA HENRY

2020 DEC -1 AM 11: 27

FILED

BY_____
DEPUTY

## MONTANA EIGHTH JUDICIAL DISTRICT COURT, CASCADE COUNTY

| | |
|---|---|
| IN RE THE ESTATE OF:<br><br>DOUGLAS C. DOWER,<br><br>     Deceased. | Cause No. BDP-20-003<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

The Court held a hearing on October 27, 2020, on the Motion by the decedent Douglas Dower's widow, Linda G. Dower (Linda) to remove the Personal Representative, Jayne Dower Lux (Jayne), decedent's daughter from the role of personal representative, and on their cross motions for partial summary judgment. Jayne and Linda testified. The Court found that the record did not support Linda's argument that Jayne was violating her statutory duties or otherwise abusing her authority, and declined to remove Jayne as personal representative.

The parties agreed that no further hearing on the summary judgment motions was required. (Docs. 15 and 18).

//

44

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Rule 56(c)(3), Mont. R. Civ. P. The evidence, as well as all justifiable inferences drawn from it, must be viewed in a light most favorable to the non-moving party. Once the moving party has met its burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law, the non-moving party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Needham v. Kluver*, 2019 MT 182, ¶14, 396 Mont. 500, 446 P.3d 504 (internal cites omitted).

## UNDISPUTED FACTS

Douglas Dower (Douglas) was married for 52 years to Alyce Dower until she died in 2008. They had four children, one of whom is Jayne. Douglas married Linda in 2011. Douglas died in December 2019. During their marriage, Douglas and Linda adopted a daughter, Destiny. Destiny is still a minor and is living with Dan Dower (Dan), another of Douglas's and Alyce's children. While Douglas was still alive, he and Linda executed a power of attorney (POA) giving Dan authority to act in Destiny's behalf. The POA is now expired, but Destiny remains in Dan's care, apparently to avoid a threatened Youth in Need of Care proceeding based on abuse

or neglect in Linda's care. Linda receives $465 per month from the DPHHS because the adoption was subsidized. She began assigning those checks to Dan in February 2020.

Jayne was named Personal Representative in Douglas's will. She has not yet filed a notice to creditors.[1] Douglas and Alyce (Douglas's first wife) executed a revocable living trust (Dower Family Trust) on February 1, 1997, and transferred certain property to that trust as part of their estate, to preserve some assets for their four children. The terms of the Trust provide that one half of the Trust property became irrevocable when Alyce died, one half remained revocable for Douglas's benefit during his life, and that it became irrevocable upon his death.

Linda is entitled to all property not in the Trust, except a fish, a grandfather clock, and a piano. Jayne has calculated that the total value of Linda's assets at the time of Douglas's death was $103,898.74. See, Exhibit B to Jayne's brief, Elective Share Calculation. Linda initially filed a petition for an elective share but then withdrew it, apparently because the value of her assets at the time of Douglas's death exceeded the calculated amount due after the marriage based on the 8 year marriage and the statutory elective share minimum of $75,000.

---

[1] Because she remains Personal Representative, Jayne is reminded to fulfill this and other statutory duties without delay.

Linda's total assets, with statutory allowances and exempt property, will exceed $148,000, close to half of the value of Douglas's assets as set forth in the Updated Inventory and Appraisement dated August 17. 2020. (Doc. 20).

After Douglas died, Jayne erroneously demanded that Linda pay funeral expenses from joint accounts she held with Douglas. Jayne has made mortgage payments for Linda on a condominium where she now resides. Jayne also erroneously deposited money into that joint account shortly after Douglas died. To date, the Estate has disbursed personal property it values at $24,030 to Linda. It has paid $11,800.14 in mortgage payments and rental value received to Linda. In sum, to date, the Estate has disbursed $35,844.14 to Linda. Linda contends that the Estate has "taken every step possible to deprive her of property and funds to which she is entitled." As a result, she argues, she will become a "ward of the state."

Linda claims a family allowance of $27,000, with 75% of that amount to her, and 25% of that amount to Dan. Dan and Destiny lived in the condo in which Linda now resides for about six months after Douglas died. The parties agree that Linda is entitled to a full statutory homestead allowance and a full exempt property share. They also agree that as a surviving spouse, Linda is entitled to a partial statutory family allowance, with the other part of the family allowance paid to Dan, as caretaker of Destiny. The Estate contends that the family allowance to Linda should be offset by $7,741.94, representing "rent," because she lived in the marital home

(owned by the Trust) before moving to the condo. Linda points out that she paid expenses and maintenance costs until she moved to the condo, and thereby reduced the Trust's costs. In consideration of the public policy of providing for spouses of decedents, as well as the complicated and unusual relationships here, together with Linda's evident cognitive problems, the Court concludes that the offset proposed is harsh and inappropriate

Linda testified that she has a 6th grade education and learning disabilities, which were apparent during the hearing. Linda receives $1,146 monthly in Social Security benefits and has a mortgage payment of $726.06 and another $170 in association fees for the condo in which she resides. Although she asserts that she has been paid nothing by the Estate to date, she did not dispute that the Estate has provided her with mortgage payments and personal property totaling about $35,000 so far. There are some firearms to which Linda is entitled originally valued at $7,250 at the hearing, now valued at $3575 [Doc. 42], the Court encouraged the parties to confer and Jayne to disburse them while the Court is working on this Order.

The Estate contends that its assets are insufficient, and that, therefore, the devises to Linda under the will must be abated to pay her statutory allowances (homestead and family allowance). Linda contends that amounts in the Trust should be used to pay her statutory allowances, based on her argument that the Trust is part of the Estate, citing, §72-1-103(15), MCA, which defines "estate" to include, "the

property of the decedent, *trust,*, or other person whose affairs are subject to chapter 1 through 5..." She further relies on Restatement (Second) of Property which states that an *inter vivos* transfer, "that is revocable by the donor at the time of the donor's death, is subject to spousal rights of the donor's spouse in the transferred property that would accrue to the donor's spouse on the donor's death if the transfer had been made by the donor's will." Restatement (Second) of Property §34.1(3).

Section 72-3-901(1), MCA, provides that shares of an estate must be reduced or be abated, in a specific order. Linda contends that abatement only applies if the Estate lacks sufficient funds to pay all claims, and that here, if the Estate is interpreted to include the Trust, there is sufficient property not disposed of by the will to pay all claims, so there is no need to abate or reduce Linda's share.

The Estate argues that only the non-Trust assets are subject to estate and spousal claims, and that the specific devises to Linda must be abated to pay her statutory allowances. The Estate argues that the Court should approve summary administration so that property and funds can be disbursed. It appears that relationships between and among Douglas's children and Linda became strained before the Estate and Linda hired lawyers, so some of the wrongs Linda complains of have now been resolved. The Court will not address them here.

///

## ANALYSIS

Section 72-2-412, MCA, provides that the surviving spouse is entitled to a homestead allowance of $22,500. The homestead allowance is exempt from, and has priority over, all other claims. This allowance is **in addition** to any share passing by will. "The sole statutory condition for receipt of the homestead allowance by the surviving spouse is that she survive the decedent by 120 hours." *In re Estate of Martelle*, 2001 MT 194, ¶22, 306 Mont. 253, 32 P. 3d 758. (citations omitted). The homestead allowance may also be claimed from assets other than land. Id., ¶25. It is not chargeable to any share passing by the will to the spouse.

Similarly, the exempt property allowance set out in §72-2-413, MCA, provides for the surviving spouse to receive a value of up to $15,000 over any security interests, in household furniture, automobiles, furnishings, appliances, and personal effects. The homestead allowance has priority over all claims against the estate. §72-2-801(2), MCA. Likewise, the family and exempt property allowances have priority. §§72-1-107, 72-2-412, 72-2-802, 803, MCA.

Linda asks for a family allowance of $20,250 to her (with the remainder paid to Destiny's caregiver, Dan) for a total family allowance of $27,000. The family allowance set out in §72-2-414, MCA, provides for the surviving spouse and minor children to receive a **reasonable amount** in maintenance for up to one year if the

estate is inadequate to discharge allowed sums. It is unclear to the Court how Linda arrived at this number.

The allowance may be paid partially to the spouse, and partially paid for the care of a child. It, like the homestead allowance, is not chargeable to any share passing by the will to the spouse. Family allowances are statutory enactments of public policy to ensure that the family of a decedent is not left destitute and dependent on public charity. *Estate of Lawson*, 222 Mont. 276, 721 P. 2d 762 (1980). Such allowances grant a vested interest in property apart from, and in addition to, rights flowing from the Estate itself. Id. at 762. The Court is to liberally construe the right to effectuate the public policy behind the statute.

In total, Linda is claiming statutory allowances totaling $57,750 for her and Destiny (25% of Linda's claimed family allowance of $27,000 would go to Destiny). Douglas's probate assets total approximately $64,160.00. Costs of administration as of August, 2020, were $12,217.50. There is a deficiency of approximately $5,807.50 between the statutory allowances and the costs of administration and the total probate assets. The issue is whether that deficiency should be made up by abating the devises Linda received under the will, or by using assets in the Trust. The Court has concluded that the deficiency here should be made up by abating the devises to Linda under the will. See, *Estate of Lawson*, 222 Mont. 276, 279, 721 P.

2d 760 (1986). This would, in effect, consider the months Linda remained in the house to have been rent free.

Montana law provides that the homestead allowance is exempt from and has priority over all claims against the estate, with similar priority granted under the family allowance and exempt property provisions in order to provide dependents of a decedent with the means to provide for the basic necessities of life. *Estate of Wilhelm*, 233 Mont. 255, 263, 760 P. 2d 718 (Mont. 1998). Section 72-2-415(1), MCA, provides that, if the estate is otherwise sufficient, property specifically devised may not be used to satisfy rights to the homestead allowance or exempt property. Conversely, if the estate is not sufficient to pay these amounts, other property, if available, may be used to satisfy these rights.

When probate assets are insufficient to pay all expenses and disbursements the abatement statute applies. §72-3-901, MCA; *Estate of Barber*, 239 Mont. 129, 138, 779 P.2d 477 (Mont. 1989). The abatement follows the following order: (a) property not disposed of by will; (b) residuary devise; (c) general devises; (d) specific devises. §72-3-901, MCA. Section 72-3-901, MCA, is part of the Uniform Probate Code (UPC) (Title 72, Chapters 1-5, MCA). The UPC is to be liberally construed and applied to, among others, discover and make effective the intent of a decedent in distribution of the decedent's property. §72-1-101(2)(b)(ii), MCA.

Section 72-6-112(2), MCA, which is not part of the UPC, provides that, **"Except at otherwise provided by statute**, a transferee of a nonprobate transfer is subject to liability to any probate estate of the decedent for allowed claims against decedent's probate estate and statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances." (emphasis added).

Douglas's probate estate is composed entirely of tangible personal property which was specifically devised to Linda. There are no other probate assets. It was clearly Douglas's intent that Linda receive this property. In addition to this specifically devised property, Linda is entitled to a homestead allowance, family allowance, and exempt property. The allowances and exemptions take priority over the specific devises. Because the estate is insufficient to pay the allowances, exemptions, and specific devises, Linda's specific devises must abate and be used to satisfy her rights to the homestead allowance, family allowance, and exempt property in accordance with §72-3-901, MCA.

The Court finds §72-6-112(2), MCA, does not apply because §72-3-901, MCA, applies. Because there are specific devises that can abate to satisfy Linda's homestead allowance, family allowance, and exempt property, §72-6-112(2), MCA, is not applicable. Section 72-6-112(2), MCA, would only operate if there was no other property or devises to abate to satisfy the allowances and exemptions.

Linda asks for a family allowance of $20,250 (with the "remainder" paid to Destiny's caregiver, Dan) for a total family allowance of $27,000. The Court concludes that this request is reasonable.

## SUMMARY ADMINISTRATION

Jayne has requested summary administration pursuant to §72-3-1104, MCA, because the value of the probate estate does not exceed statutory allowances and costs of administration. After considering the above analysis, the Court agrees.

## ATTORNEYS' FEES

Both parties have requested their attorney's fees incurred in pursuing their motions. The Court finds each party shall be responsible for her own attorney's fees.

IT IS HEREBY ORDERED that:

1.    Linda's Motion for Summary Judgment is DENIED.

2.    The Estate's Motion for Summary Judgment is GRANTED.

3.    The Estate shall be subject to summary administration pursuant to §72-3-1104, MCA.

4.    Each party shall pay her own attorneys' fees and costs.

DATED this ___1___ day of December, 2020.

_____
Elizabeth A. Best
District Court Judge

cc: Liza L. Dennehy
Laura E. Walker

CERTIFICATE OF MAILING
This is to certify that the foregoing was
duly served by mail upon counsel of
record at their address this _____
day of December, 20 20
TINA HENRY, CLERK OF COURT
By _____ DEPUTY