No. 89-084

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN THE MATTER OF THE ESTATE OF
GERALD W. BARBER, Deceased.

_____

APPEAL FROM: District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Phillip R. McGimpsey, Billings, Montana

For Respondent:

Donald E. Ronish, Lewistown, Montana

_____

Submitted on briefs:  June 8, 1989

Decided:  September 14, 1989

Filed:

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Jerry F. Barber, Barbara A. Snooks and Ted L. Barber, the children of the decedent, Gerald W. Barber, appeal from an order of the District Court, Tenth Judicial District, Fergus County, approving and settling the final account of the personal representative, Margaret A. Barber, and directing distribution of the estate of the decedent.

The personal representative, Margaret A. Barber, appeals from the same order of the District Court denying further attorney fees for extraordinary services rendered in the administration of the estate.

We affirm the order of the District Court insofar as it approves the final account of the personal representative and orders distribution of the estate; and reverse the portion of the order denying attorneys fees for extraordinary services for the reasons hereafter stated.

The three appellants here (for want of a better term, hereafter "Objectors") are children of the decedent Gerald W. Barber by a former marriage. The personal representative, Margaret Barber, is the widow of the decedent.

The Will

Gerald W. Barber was a long-time farmer in the Denton area. He died testate on December 4, 1982. At the time of his execution of the will he was competent.

On September 16, 1982, the decedent conveyed to his wife, Margaret Barber, 640 acres of his farm, which he considered and treated as one-fourth of his farm holdings.

On the same day but after the conveyance to his wife, he executed his last will and testament. His will directed that

- 2 -

if his other rural property, which included his interest in the farm, should be sold during his life or during probate of his estate, the payments thereof would be divided among his heirs as follows:

> One-fourth to his wife for the 640 acres he had deeded to her that day; three-eighths to his children; three-eighths to his wife for life or until she remarried, and the remainder to his children.

However, because of matters which occurred during the probate of the estate, hereafter detailed, at the time of the petition for distribution of the estate, except for joint tenancies, and specifically devised property, the residue of the estate was to be distributed one-half to the widow, and one-half to the surviving children.

The Farm Sale

Pertinent to the disposition of this case is an understanding of the sale of the decedent's farm lands, and what occurred respecting the sale contract in the administration of the estate.

On October 18, 1982, the decedent and his wife, Margaret Barber, entered into a contract for deed to sell the farm holdings to Russell E. Senef and Phyliss L. Senef, for $1,100,000.00. The real property to be transferred under the sale included the 640 acre parcel which decedent had earlier deeded to Margaret A. Barber. The down payment by the Senefs to Barber for the farm property included cash in the net amount of $71,215.00 and 560 acres of land transferred from Senef to the decedent Barber. The decedent deposited the down payment in a joint bank account with his wife, Margaret Barber, and used some of the proceeds to purchase a single premium annuity of which his wife was the owner.

When the decedent died on December 4, 1982, the balance due on the contract became an asset of the estate, and subject to the terms of the will.

On November 25, 1986, while the estate was in progress, Margaret Barber, as personal representative of the estate, petitioned the District Court for approval of an offer from the buyers under the contract for a full and final payment by the purchasers of $745,794.56. The principal balance on the contract then was $836,960.49. The 1985 payment had been deferred, and accrued interest to the time of the petition for approval brought the total due to $994,392.75. Over the stiff opposition of the objectors, the District Court on December 29, 1986, approved the acceptance of the offer. The factors which led the court to approval will be discussed later in this opinion.

The Final Account(s) and Petition for Distribution

On January 20, 1987, the personal representative filed her first and final account, petition to fix attorneys fees, and for distribution, and a hearing thereon was duly noticed by the court. On February 18, 1987, the personal representative filed a supplemental account, to report an additional $589.64 in interest. On July 9, 1987, the personal representative filed a further supplemental account to report interest accrued since the date of the first account. In the meantime, the objectors had requested and obtained discovery and eventually the District Court held its hearing on the accounts on July 9 and 10, 1987.

On January 12, 1988, the court issued an order settling and approving the first and final account as supplemented by the personal representative. That order also included provisions for distribution of the decedent's estate. This order was appealed by the objectors to the Montana Supreme

- 4 -

Court under its Cause. No. 88-230 which appeal was dismissed by this Court on January 10, 1989.

On August 8, 1988, the personal representative filed a "Current Account and Petition to Fix Fees" which reported changes in the financial status of the estate after July 8, 1987. Included in the disbursements were three items, a payment to Margaret A. Barber as personal representative of $7,500.00 as part of her fee for representing the estate; further payment to Margaret A. Barber in the sum of $12,000 as part of the principal on loans she had made to the estate; and a payment of $12,000.00 to Donald E. Ronish, as part of his attorney fee in the estate. A hearing was held on August 30, 1988, on the opposition of the Objectors to the account as supplemented and on December 14, 1988, the District Court issued its order approving "the current account, and actions, proceedings done and conducted in this estate by the personal representative, attorney and accountants." The Court also denied additional attorney fees for legal services and ordered the personal representative to distribute the balance of the estate to the heirs and beneficiaries as petitioned in the final account.

The notice of appeal filed by the Objectors which brings the case to this Court recites that it is an appeal from the order of December 14, 1988, of the District Court.

Jurisdiction

Before we proceed to a discussion of the other issues raised in the case, we will first regard the issue of jurisdiction raised by the personal representative, Margaret Barber.

The personal representative first contends that this Court has no jurisdiction to consider matters handled during the administration of the estate that are not included in the order of December 14, 1988, issued by the District Court.

The contention of the personal representative is that the order of the District Court on January 12, 1988, settling and approving the first and final account was itself an appealable order, and since no appeal was made by the Objectors from that order, the issues that relate to that order cannot be considered on this appeal. The District Court had considered this issue and decided that the matters involving the prior accounting were merged in the final account and that the court had jurisdiction.

The District Court is given broad jurisdictional powers in the handling of probates. It has exclusive jurisdiction of all probate matters. Section 72-3-111, MCA. In any supervised administration (by order of the District Court this particular estate was a supervised administration), the court is given "continuing authority" in a single in rem proceeding to secure complete administration until the entry of an order approving distribution of the estate and discharging the personal representative. Section 72-3-401, MCA. Moreover, the several accountings filed in the estate proceedings by the personal representative in this case were a continuing report to the court as a first and final accounting for the purpose of obtaining authority for distribution under § 72-3-101, MCA. A final accounting is required to close an estate, whether it be supervised or not. Section 72-3-1005, MCA. Unless otherwise ordered by the court, a supervised administration may only be terminated by an order of the court with the time restrictions, notices and contents of orders as for other probates set forth in § 72-3-406, MCA. We therefore hold that all of the matters contested by the Objectors are merged, so that the order of the District Court of January 12, 1988, settling and approving the account, and the order of December 14, 1988

- 6 -

also approving the final account are to be treated as one order for the purpose of determining the right to appeal.

A second jurisdictional argument raised by the personal representative is that there was no issue jurisdiction before the District Court and before us, because no written objections were filed by the Objectors to any of the accountings made by the personal representative. Without pleadings, the personal representative argues, no issues were defined, and without issues there is nothing on which an appeal can be based.

The provisions of the Uniform Probate Code as adopted in Montana do not provide for the filing of written objections by Objectors to an accounting by a personal representative. Section 72-3-1001, MCA, provides that in a formal proceedings (which includes supervised administration under § 72-3-406) the petition may request the court to consider the final accounting and approve the same. Section 72-3-1001, MCA, also provides that after notice to all interested persons and hearing, the court may enter appropriate orders. Section 72-3-1005, MCA, requires a final accounting before an estate may be finally closed. When notice is required under the Uniform Probate Code, it must be given in conformity with § 72-1-301, MCA, which notice makes the subject of the order binding as to all persons given notice of the proceedings. Section 72-3-111, MCA.

With respect to the accountings here, the Objectors, after due notice given, appeared at the times of the hearings (but only by counsel at the August 30, 1988 hearing) and examined witnesses produced by the personal representative, and by themselves. In subsequent briefs provided to the District Court, the Objectors set forth their contentions with respect to the proposed accountings and distribution. Thus the situation relating to issues raised by Objectors in

a probate proceeding is much the same as issues raised by any appellants in this Court. The notice of appeal in the appellate case simply vests this Court with jurisdiction. Thereafter, the issues are defined by those stated in the appellant's brief, provided that the issues were also presented to the District Court. Since we have no other statutory authority in the matter, and it appears otherwise proper, we will consider the issues raised by the Objectors in their various briefs before the District Court as the issues for consideration by us. In like manner, as to issues not raised before the District Court and now raised on appeal (there are some) we will follow the usual appellate rule that unless the issue is raised and considered before the District Court, it cannot be considered by us on appeal. We hold therefore that there is issue jurisdiction both before the District Court and before us.

Objectors' Issues

Having said the foregoing, we find that the issues raised by the Objectors here are somewhat difficult to define. The issues on appeal are stated generally by the Objectors as follows:

> 1. Did the District Court err and abuse its discretion by allowing the August 5, 1988 final account of the personal representative, Margaret A. Barber, to be settled, allowed and approved?

> 2. Considering the nature and the scope of the August 30, 1988, hearing, together with the multitude of unresolved estate tax and income tax issues, did the District Court err and abuse its discretion by confirming and approving as correct and proper all of the actions and proceedings done and conducted in the estate of Gerald W. Barber by the personal representative, the estate's attorney, and the estate's accountants?

The general statements of issues foregoing do little to inform the Court with specificity of the contentions of the

- 8 -

Objectors. We are committed, however, by § 3-2-204(5), MCA, in all equity cases or proceedings of an equitable nature to review all questions of fact arising upon the evidence presented in the record, and to determine the same as well as to questions of law. With that statute in mind, we proceed to consider the issues we find raised in the record.

Abatement Proportions

In its order of January 12, 1988, the District Court concluded that interest earned during the probate be apportioned one-half to the widow and one-half to the Objectors. (Note: This proportion does not offend the provisions of the will; it will be explained in the discussion below of the payoff on the contract for sale.) The District Court at the same time concluded that the proportional value of the specific devises for abatement purposes would be 55.387 percent for the children (Objectors) and 44.613 percent to the widow (personal representative).

Objectors contend on appeal that the latter ruling constituted an "accounting virus" and carried through to the rest of the accountings. They contend that the accountings failed to conform to the statutory requirements of §§ 72-25-403, 72-25-404, 72-25-497, and 72-25-411, MCA. Thus, the appellants' brief reads, "The personal representative and her legion of professional advisers have failed to take all steps reasonably necessary for the management, protection and preservation of the estate in their possession." What the Objectors' appellate brief does not reveal is how the accountings do not conform to statutory requirements or how they abuse the personal representative's duty of management, protection and preservation of the estate.

The District Court found that the abatement statute, § 72-3-901, MCA, applied because the residue of the estate and the interest accrued was insufficient to pay all expenses and

- 9 -

disbursements. The District Court utilized the values of specifically devised property as between the widow on one hand and the Objectors on the other to determine those proportions to be 55.387 percent for the children, and 44.613 percent for the widow.

Section 72-3-901(2), MCA, provides that abatement within these classifications "is in proportion to the amounts of property each of the beneficiaries would have received if full distribution of the property had been made in accordance with the terms of the will." It appears that the District Court followed this statute in determining the proportions for abatement. The Objectors do not show us in any particular that the proportions were wrongly computed.

We are unable to fathom how the accountings do not conform to the statutory requirements of §§ 72-25-403, -404, -407, and -411, MCA. These statutes are part of the Revised Uniform Principal and Income Act, applying to estates, trusts, and fiduciary relationships. Section 72-25-404, MCA, provides that in estates, as far as specific legatees are concerned they shall receive the income from the property bequeathed or devised to them respectively, less taxes and ordinary expenses of the estate; and as to all other legatees and devisees, the balance of the income, less taxes and ordinary expenses of management in proportion to their respective interests in the undistributed assets. In this case, the District Court, by providing that all interest shall be divided one-half to the widow and one-half to the children, determined that the interest earned from estate bank accounts should be distributed in accordance with the proportional interest in the residue estate, one-half to the widow, and one-half to the children. The apportionment of income is therefore in accordance with § 72-25-404, MCA. The apportionment of abatement is in accordance with § 72-3-901,

MCA. These statutes relate to two different subjects and, as in this case, do not necessarily coincide. We uphold the proportions decided by the District Court.

The testimony in the case showed that the estate computed the interest earned during the probate based on the money that came in from specific bequests, property and the interest earned thereon. The money from the property specifically devised for the widow exceeded by some $7,000.00 the money which came from the property specifically devised to the Objectors. There were no countervailing computations made by the Objectors.

As an aside, we note that the provisions of the revised Uniform Interest and Income Act were not raised in the District Court and are raised for the first time on appeal.

Payment of Fees; Repayment of Loans

On December 30, 1987, the personal representative paid out of funds of the estate $7,500.00 to herself as part of her personal representative fee; $12,000.00 to herself as part of the principal of loans she had made to the estate; and $12,000.00 to Donald E. Ronish as a part of his claimed attorneys fee.

At the July 9-10, 1987 hearing, the Objectors challenged the subject of undocumented loans by Margaret Barber to the estate, and challenged the appropriateness of fees and expenses charged by both the personal representative and the estate's attorney. The District Court did not enter its first order approving the final report of the personal representative until January 12, 1988. Thus, the Objectors now contend that the payments were improper without the prior approval of the court, and that the payments constituted a distribution of the estate to Margaret Barber, which represented a conflict of interest, self-dealing, and "just plain selfishness," and a violation of the estate attorney's

duty to avoid self-serving conduct. The appellants' brief points to the admission of the estate attorney that he had procured the payment to himself in order to accomplish his personal income tax plan for 1987.

In the District Court's order of December 14, 1988, it held that the payments to the estate's attorney and the personal representative of the respected fees were merely payments to creditors of the estate and were approved.

There isn't any doubt in this case that the personal representative, the widow of the decedent, made loans to the estate. The loans were necessary because the payments on the farm contract were not coming in, federal and state taxes had to be paid, and other expenses made the loans necessary. The District Court eventually found that she had made loans totalling $14,633.00 to the estate, and that she was entitled on those loans to receive interest of $4,730.15 to February 1, 1987, plus $4.01 per day thereafter until paid.

Objectors contend that because this was a supervised administration, such payments should not have been made without a prior order from the District Court. The personal representative, however, in a supervised administration is not so restricted. Section 72-3-404, MCA, provides that a supervised personal representative has, without interim orders approving the exercise of a power, all powers of personal representatives under the code, except that a personal representative may not make a distribution of the estate without the prior order of the court. As the personal representative in brief points out, under § 72-3-613(18), MCA, the personal representative has the power to pay her own compensation and other expenses incident to the administration of the estate; under subsection (26) of the same statute, the personal representative has the power to satisfy and settle claims. Section 72-1-103(4), MCA, states

that "claims" include liabilities of the estate and "expenses of the administration." The loans were liabilities of the estate which arose after the death of the decedent, and the personal representative fees and attorney fees are expenses of administration. The personal representative has statutory power to pay these amounts without a prior order of the court. Without burdening this opinion with figures, we determine that the compensation of the personal representative eventually allowed by the court was well within the limits prescribed in § 72-3-631, MCA, and that the compensation of the attorney so approved, was within the limits set out in § 72-3-633, MCA. The part payment of those fees on December 30, 1987, was not improper in this case.

We do not find any conflict of interest or violation of ethics by either the personal representative or the attorney. In each case the partial payments were far less than the amounts that they were eventually entitled to, the payments did not affect in any way adversely the administration of the estate, and were just claims against the estate for which there was a right of eventual payment in full. In fact, such expenses of administration enjoy a first priority to the assets of the estate. Section 72-3-807, MCA.

The appellants' brief characterizes the payments to the personal representative and to the estate's attorney as "knowing, flagrant acts of conflict of interest, self-dealing and arrogant selfishness," but there is absolutely no substance to such charges.

Settling the Personal Representative's Final Accounts

The next contention of the Objectors is that the District Court erred in concluding that "all acts and proceedings done or conducted in this estate by the personal representative, the attorney and accountants were correct and proper in the same are hereby confirmed and approved."

Objectors also contend that the District Court should not have approved the final accounts of the personal representative before ascertaining that the Federal Internal Revenue Code was complied with.

The Objectors shotgunned twelve claimed issues under this caption, which we will take up separately:

(1)  Whether the estate erred and violated the Federal Internal Revenue Code by reporting that the estate was terminated as of December 31, 1986, when there were still monies to be distributed to the estate's beneficiaries.

When the Senef contract was paid off during the probate of the estate, the personal representative had on hand $745,794.56 of which $660,000.00 was allocated to principal, and the balance to interest income.  The contract was a principal asset of the estate and when the payoff was received, distribution of part of the major assets was possible.

The money received on the Senef contract represented an 85.8 percent capital gain to the estate.  The federal tax laws were substantially changed with respect to capital gains, taking effect in 1987.  By distributing the proceeds of the Senef sale before December 31, 1986, the estate was able to take advantage of the 60 percent deduction allowed for capital gains up to December 31, 1986 with the balance taxable at 20 percent.  The attorney for the estate estimated that if the distribution occurred after December 31, 1986, under the change relating to capital gains in tax laws, an additional substantial amount in federal taxes would be owed by the estate.

In addition, it was the intention of the personal representative and the estate attorney to distribute the remaining 15 percent of the estate assets within 65 days from December 31, 1986, which under federal regulations could be

construed as having been distributed before December 31, 1986. The objections of the Objectors made use of the 65 day rule impossible.

Federal regulations prohibit unduly prolonging estate proceedings for federal income tax purposes and the estate will be deemed closed for that purpose after expiration of a reasonable time for completion of administration and when all property is distributed except a reasonable amount set aside in good faith for payment of unascertained or contingent liabilities and expenses. I. R. S. Regulations, Section 1. 641(b)-3(a).

Under Montana law, an estate shall be closed within two years of the date of the appointment of the personal representative. Section 72-3-1015, MCA. At the time when this estate was closed for income tax purposes, the estate had been in probate for more than four years. By the end of 1986, all income producing property had been distributed and the amount held back by the personal representative was that amount adjudged necessary to pay the remaining expenses of the estate.

Counsel for the Objectors contends that after December 29, 1986, there was money in the estate that was ultimately distributed to the estate's beneficiaries. It contends therefore the estate was not terminated for tax purposes as of December 31, 1986, which would result in a shift of $660,000.00 of taxable income from 1986 to 1987. This contention is completely unexplained or supported by any authority from counsel for the Objectors.

(2) Whether the Internal Revenue Service form 1041S filed on behalf of the estate of Gerald W. Barber "trust" for the years 1987 and 1988 was a false and fraudulent income tax return?

In completing reports for income tax purposes after December 31, 1986, the estate utilized form 1041S which is normally used by trusts and fiduciaries but which had a blank for "estate" which was checked in each of these cases. Objectors contend that no trust had been established under the will or otherwise and therefore the forms were false and fraudulent.

This purported issue is nothing more than picayunish nitpicking. The accountant testified that he utilized the forms for the purpose of making required reports of income taxes to the federal government and that these were the forms which were available.

(3) Whether all of the assets of the estate of Gerald W. Barber have been properly probated. Specifically, the estate's share of the contractual net down payment in the amount of $71,215.00 received from Rusty Senef on October, 1982, which was not properly classified on the estate's Internal Revenue Service form 706.

The use of the term "not properly classified" is not otherwise explained in the Objectors' brief. Before the District Court, the Objectors contended that the $71,215.00 received by the testator during his lifetime was actually a part of the estate, and subject to distribution through the estate. The answer, of course, is that the down payment, received by him during his lifetime, belonged to the decedent to do with it as he wished. This was the item, as reported earlier, that the decedent used before his death, to purchase an annuity in joint tenancy with his wife. No probate court has the power to reverse that transaction or to classify the payment as anything but a payment received by the decedent during his lifetime to be spent at his entire discretion.

(4) Whether the failure of the personal representative to design, implement and maintain a fair and accurate accounting system violated generally accepted accounting principles for the matching of income and expense to the

proper beneficiary. By failing to do so, the personal representative did not properly segregate the assets, income and expenses relating to each beneficiary's individual share of the estate based on each person's specific bequest and/or devise.

There is no statutory or other requirement that a personal representative maintain a separate account for each heir devisee named in a will or entitled to succeed by right of succession. Entirely lacking from appellants' brief is any indication that any devisee received more or less under the general accounting system used by the personal representative than that person deserved.

(5) Whether the 1982 Federal and State income taxes for the decedent and his wife, the personal representative herein, were properly allocated between the personal representative and the estate. The 1982 farm income, in the amount of $62,134.00 should have been allocated to Margaret Barber on the basis of her 25 percent ownership in the Senef farm land.

When Gerald Barber, the decedent, deeded 640 acres of his farm property to his wife, which was construed to be a 25 percent ownership of Barber's farm holdings, the crops had already been harvested. There was no other income in 1982 accruing to the farm properties after the deed given to Margaret Barber. She was not entitled to any of the income on the crops harvested before her deed, and the estate was not bound to allocate any of that income to her.

(6) Whether the undocumented loan by Margaret A. Barber in the amount of $9,983 and the interest charged thereon was an ordinary and necessary expense of the estate if the loan was based on the improper allocation of the 1982 Federal and State estate income taxes.

As discussed under paragraph (5) above, the allocation of the 1982 Federal and State income taxes was not improper. The District Court found a valid loan necessary for the

- 17 -

payment of income taxes and that the same was a proper burden of the estate. There is no basis for this contention.

(7) Whether the failure of the personal representative to properly consider the 1982 crop insurance proceeds due to her 25 percent ownership in the Senef farm land was a distortion of income and expense.

The Objectors fail to show any pertinence to this paragraph.

(8) Whether the personal representative failed to properly allocate 1982 Federal self-employment taxes and the recapture taxes between the decedent and herself, resulting in the estate paying part of her personal income tax obligation.

The Objectors here are simply ringing the changes on an old theme.

(9) Whether the interest paid by the estate on the personal representative's undocumented loans to the estate was an ordinary necessary tax deduction considering that the estate paid an above-market rate of interest when they had the clear and unequivocal cash resources to pay off such advances.

The District Court found that the loans were indeed proper, had been made to the estate when it was necessary for the estate to borrow money to pay necessary taxes and expenses and it awarded interest based on statutory amounts. Again, this purported issue has no substance.

(10) Whether the estate can take an ordinary, necessary tax deduction for a personal representative's fee and expenses which have not been documented in accordance with Internal Revenue Code § 274(d). By failing to keep a diary, or submit any other written documentation or reference in this estate, the personal representative's fee and expenses can be questioned as improper, ordinary and necessary expense.

We doubt it.

(11) Whether the attorney fees paid to Donald E. Ronish is a proper deduction for the following reasons:

(a) Because the entire amount of Mr. Ronish's fee was allocated to the estate, even though he served

the personal representative in her individual capacity throughout this probate.

(b) Because part of the fee could be classified as excessive, and thus nondeductible, considering the relevant factors involved with "reasonable compensation" issues.

In this complicated and large estate made more complex by counsel for the Objectors, the District Court approved an attorney fee for services rendered to the estate which was less than the amount that could have been awarded by statute.

The District Court found that the personal representative and the attorney, at the outset of the administration of the estate, entered into an oral agreement for an attorney fee based on the following:

On the sum of $120,482.39 of life insurance proceeds, no fee would be charged;

On the decedent's one-half of the joint tenancy property, a fee of 2 percent thereof would be charged;

On the rest of the estate the statutory schedule set forth in § 72-3-633, MCA, would be charged, namely 4½ percent on the first $40,000.00, and 3 percent on the remaining.

The District Court found that the fee as computed was less than the statutory fee that could be awarded.

We find the fee to be a proper deduction from the assets of the estate.

(12) Whether the estate properly calculated its "distributable net income" deduction for its short period tax year ending December 31, 1986. By failing to make a distribution of specifically bequested monies to Jerry F. Barber, Barbara A. Snooks and Ted L. Barber in the amount of $4,000.00 from the Twin Butte Ranch which was received by the estate on December 29, 1986, when the aforementioned persons were by operation of a Personal Representative's Deed, the clear and lawful owners of the income asset in question, the estate erred.

There is no explanation in Objectors' brief for this claimed issue. The respondent's brief indicates that the $4,000 represented the estate's share of the 1982 income from the Twin Butte Ranch and so was not an item that went with a deeded distribution. "Segregated crops do not go with a deed to the land," Respondent answered.

After concluding the foregoing twelve claimed issues, Objectors' brief contends that the estate should not be settled, allowed and approved until the estate, the personal representative and the Internal Revenue Service have concluded their involvement. The Objectors' ask for the appointment of a special master to handle the estate meanwhile. This, although a closing letter from the Internal Revenue Service had been issued to this estate on April 3, 1985.

Conclusions

The Objectors have failed to show before the District Court or on appeal any discrepancy or error in the final account of the personal representative; any error in the distribution of the estate; any error in the proportions found by the District Court as to abatement or as to the distribution of income; or any error on the amounts of attorney fees or personal representative fees paid in the estate. In most instances the Objectors raised a completely without weight issue based on some unsupported speculation that someday, somewhere the Internal Revenue Service will come back and find some error in the method of handling this estate. The District Court refused to prolong the proceedings on that premise and so does this Court. We affirm as against the appeal of the Objectors.

Cross Appeal

The estate cross appeals from the decision of the District Court that additional attorney fees for

extraordinary services should not be granted here. The District Court found all of the attorney services in this estate were ordinary services, and did not warrant an additional fee. The question here is whether the attorney rendered extraordinary services in the conduct of this estate for which he should receive further compensation beyond his contract. We so find, and reverse the District Court on this point.

The personal representative of an estate can contract for an attorney's services, and the estate is bound by such contract if it is fair and equitable. In Re Estate of Magelssen (1979), 182 Mont. 372, 597 P.2d 90. Such a contract does not preclude the award of additional fees where the services rendered to the estate by the attorney are extraordinary in nature and reasonably necessary for the good of the estate.

In the circumstances here, the following consisted of extraordinary services to the estate:

The Personal Representative

The will of decedent appointed his wife, Margaret A. Barber, to be the personal representative. If she were unable to act, the will appointed Barbara A. Snooks, the decedent's daughter, as personal representative. Pursuant to the will, Margaret A. Barber was appointed personal representative on December 16, 1982.

On August 8, 1983, Barbara A. Snooks, the daughter, petitioned the District Court to be co-personal representative, alleging that she had been unable to get information from the personal representative, that the attorneys fee was excessive, and that the personal representative and her attorney had failed to utilize all of the income tax elections available to the estate. After a hearing and briefs submitted, the District Court denied the

petition of August 29, 1983 for appointment of a co-personal representative.

## The Senef Contract

On November 25, 1986, the personal representative petitioned the court for approval of the offer of Russel Senef to pay off the balance due on the contract for sale for the Barber farm. As we indicated in the foregoing, the principal balance due at the time on the contract was $836,960.00. The proposed offer came to $745,794.56. This represented 75 percent of the principal balance due and accrued interest to December 1, 1986. In order to facilitate the acceptance of the offer, the personal representative offered to waive her 25 percent of the payment which was due to her under the contract, and to accept instead one-half of the settlement, the other half to be divided between the remaining heirs equally. Thus, what the heirs would receive under the proposed offer, and the agreement by the personal representative to waive her portion, was everything that they would have received under the contract if it had been paid out by the buyer during the lifetime of the widow.

The petition for approval of the proposed offer further sets out undisputed facts at the time, that the farm was losing profitability, a farm recession was occurring in the State at the time, and it was to the best interests of the estate to negotiate a settlement of the contract for sale. Further, under the proposal, the personal representative would distribute $660,000.00 of the payment immediately, one-half going to her, and each of the Objectors receiving $110,000.00 cash payment. Eventually the District Court approved the offer, the money was received, and the distribution made and accepted as proposed. This approval was given, however, over the strong objections of the Objectors, acting through their counsel.

- 22 -

After the court approved the offer on December 29, 1986, the Objectors filed a Rule 59(g) motion to alter or amend the judgment contending that they were not forewarned about the pending distribution. Counsel for the personal representative filed a brief opposing the Rule 59(g) motion, and the Objectors, purportedly acting under Rule 12(f), M.R.Civ.P., moved to strike portions of the brief as impertinent and scandalous. On February 18, 1987, the District Court denied the Rule 59(g) motion, and denied the Rule 12(f) motion on the grounds that the latter rule applied only to pleadings and not to briefs.

The Final Accounts

We have chronicled in the first part of this opinion the objections of the Objectors to the first and final accounts of the personal representative. Two hearings were required on those objections, one lasting two days and the other a full day in court, and full briefs were required. The District Court found no substance in the objections made by the Objectors.

The Appeals

In addition, there have been four appeals to this Court, including the present appeal. The first appeal involved an attempt by the Objectors to force a partial distribution of the estate, which was denied in the District Court. This Court affirmed on appeal. Estate of Barber (1985), 216 Mont. 26, 699 P.2d 90.

Two subsequent appeals to this Court were dismissed. The present appeal has no substance as the foregoing portion as this opinion indicates.

The District Court file is a record of obstreperous, obstructive and groundless objections to all steps and proceedings undertaken by the personal representative which required of counsel for the estate continual briefings,

correspondence, and court appearances in order to keep the estate moving. We have here a record not of ordinary attorney services in the conduct of an estate proceedings, but rather one involving extraordinary services brought about by the actions of the Objectors.

The blame for the detrimental objections to the progress of an ordinary estate can not be laid entirely at the feet of the Objectors. The District Court file, and the appellate record evince that the attorney for the Objectors is essentially responsible for the troubles in this estate.

We therefore determine that the extraordinary services rendered by the attorney for the estate require an additional fee of $3,000.00. This, however, shall not be a burden on the estate itself. One-half thereof shall be the joint and several burden of the Objectors, personally, and the other half shall be paid by counsel for the Objectors, Philip P. McGimpsey.

## Disposition

The judgment of the District Court approving and allowing the several accounts of the personal representative, and providing for distribution and the fixing of attorney and personal representative fees for their ordinary services is by this Court affirmed. That portion of the judgment, however, which denies the attorney for the estate an additional fee for extraordinary services is by this Court reversed. On remand the District Court shall enter judgment in favor of the attorney for the estate for the sum of $3,000.00, one-half thereof to be the joint and several responsibility of the Objectors, Ted L. Barber, Barbara A. Snooks, and Jerry F. Barber; and one-half thereof the responsibility of the attorney for the Objectors, Philip P. McGimpsey.

John C. Sheehy
Justice

We Concur:

_____

John Conway Harrison
William E. Hunt Sr.
B. C. McDonough
Justices