

FILED

09/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0012

DA 21-0012

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 245

IN THE MATTER OF THE ESTATE OF
DOUGLAS C. DOWER,

      Deceased.

FILED

SEP 2 8 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDP-20-003
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Laura E. Walker, Heather M. Starnes, Jardine, Stephenson, Blewett &
        Weaver, PC, Great Falls, Montana

    For Appellee:

        Liza L. Dennehy, Frank J. Joseph PC, Butte, Montana

    For Amicus Business, Estates, Tax, Trust, and Real Property Section of the
    Montana State Bar:

        Justin M. Bryan, Bryan Law Firm, PC, Bozeman, Montana

        Drew Moore Gaertner, McLean, Younkin & Willett, PLLC, Bozeman,
        Montana

        Molly S. Considine, Patten, Peterman, Bekkedahl & Green, PLLC, Billings,
        Montana

Submitted on Briefs: August 12, 2021

Decided: September 28, 2021

Filed:

                _____
                        Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Linda Dower (Linda) appeals an order entered in the Eighth Judicial District Court, Cascade County, denying her motion for partial summary judgment wherein she maintained that certain trust assets should be included in the estate for purposes of satisfying her statutory allowances. We affirm.

¶2 We restate the issues as follows:

1. *Whether the District Court erred when it concluded that trust assets were nonprobate assets and could only be used to satisfy Linda's statutory allowances when and to the extent the probate estate is insufficient.*

2. *Whether the District Court erred when it determined the probate estate was sufficient to satisfy Linda's statutory allowances through the abatement of her specific devises.*

3. *Whether the District Court abused its discretion by denying Linda's motion to remove Lux as personal representative.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Douglas Dower (Douglas) was married to Alyce Dower (Alyce) for 52 years until her death in 2008. The couple had four children, including Jayne Dower Lux (Lux). During their marriage, Douglas and Alyce executed a revocable living trust (Trust) on February 1, 1997, and transferred certain property to that Trust as part of their estate to preserve assets for their children. The Trust's terms provided that one-half of the Trust property became irrevocable upon the death of Alyce. The other half remained revocable for Douglas's benefit during his lifetime and became irrevocable upon his death. Douglas also executed his will (Will) on February 1, 1997. The Will named Lux as the Personal Representative of the estate.

2

¶4 Douglas and Linda married in 2011. At some point during their marriage, the couple adopted a daughter, Destiny. The Trust's terms were amended in 2015 to include Destiny on the list of children. The Trust amendment did not mention Linda. Douglas also executed a codicil to his Will to include Linda and Destiny. The Will specifically devised all of Douglas's tangible personal property to Linda. The couple also executed a power of attorney giving Dan, Douglas's son, the power to act on Destiny's behalf. Following Douglas's death, Destiny has remained in Dan's care.

¶5 Douglas died in December 2019. At the time of Douglas's death, Lux totaled Linda's assets, including joint assets transferring to her by survivorship and Douglas's nonprobate transfers to her, at $103,898.74. Linda initially filed for a spousal elective share, which Lux calculated at $62,163.29, but Linda subsequently withdrew the petition because the value of her assets exceeded the calculated amount due based on the eight-year marriage and the statutory elective share minimum of $75,000.

¶6 As of October 2020, the estate has disbursed personal property valued at $24,030 to Linda. Linda also received $11,800.14 in mortgage payments and rental value, bringing the total she has received to $35,830.14.[1] In addition to this disbursal, Linda claimed a family allowance of $27,000, allocating 75 percent to her ($20,250) and the remaining 25 percent ($6,750) to Dan for Destiny's care. Linda also claimed a full statutory homestead allowance totaling $22,500 and a full exempt property share of $15,000. In sum, Linda claimed allowances of $57,750 in addition to the nonprobate transfers and specific devises.

---

[1] The District Court's Order erroneously totaled the amount as $35,844.14.

3

¶7 At some point during the probate process, the relationship between Linda and Douglas's adult children turned acrimonious. In August 2020, Linda filed a petition to remove Lux as the Personal Representative (Petition), arguing that Lux's alleged behavior breached her fiduciary duty to the estate. The parties also filed cross motions for partial summary judgment in August 2020. The District Court held a hearing on the Petition and the cross motions for summary judgment on October 27, 2020. The District Court denied the Petition on October 28, 2020, finding no facts to support Lux's removal as Personal Representative, and issued its Order on Cross Motions for Summary Judgment (Order) on December 1, 2020. The District Court's Order granted the estate's motion for partial summary judgment and concluded that the Trust assets were nonprobate assets and unavailable to satisfy Linda's statutory claims. The Order also concluded that the probate estate was insufficient to pay all expenses and disbursements and Linda's specific devises through the Will must abate to satisfy her statutory allowances. Linda appeals the District Court's Order.

## STANDARD OF REVIEW

¶8 We review a district court's findings of fact to determine whether those findings are clearly erroneous. *In re Estate of Berthot*, 2002 MT 277, ¶ 21, 312 Mont. 366, 59 P.3d 1080. We review a district court's conclusions of law to determine whether that court's interpretation of the law is correct. *In re Estate of Berthot*, ¶ 21.

## DISCUSSION

¶9 Preliminarily, the parties do not contest whether Linda is entitled to the statutory allowances. Rather, the parties contest how those allowances may be satisfied, and

4

particularly, what constitutes the "estate." With that distinction in mind, we turn to our analysis.

¶10    *1. Whether the District Court erred when it concluded that trust assets were nonprobate assets and could only be used to satisfy Linda's statutory allowances when and to the extent the probate estate is insufficient.*

¶11    "In interpreting a statute, we first look to the plain meaning of the words used. When the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and no further interpretation is required." *In re Maynard*, 2006 MT 162, ¶ 5, 332 Mont. 485, 139 P.3d 803. In addition, we interpret the statute by viewing it in the statutory context in which it appears. *In re Maynard*, ¶ 5. The principle of *noscitur a sociis*, meaning that a word is known by the company it keeps, aids courts to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Yates v. United States*, 574 U.S. 528, 543, 135 S. Ct. 1074, 1085 (2015) (citations omitted).

¶12    Montana has enacted the Uniform Probate Code (UPC) as chapters 1 through 5 and chapter 16, part 6 of Title 72, Montana Code Annotated. The UPC governs the administration of probates, guardianships, and conservatorships. Section 72-1-103, MCA, provides the applicable definitions for chapters 1 through 6.[2] The UPC defines the term "estate" to include "the property of the decedent, trust, or other person whose affairs are subject to chapters 1 through 5 as originally constituted and as it exists from time to time during administration." Section 72-1-103(15), MCA.

---

[2] Chapters 1 through 5 are included in the UPC, while chapter 6 addresses nonprobate transfers.

¶13 Trusts, on the other hand, are governed by chapter 38 of Title 72, Montana's Uniform Trust Code (UTC). Section 72-38-505(1)(c), MCA, provides that a revocable trust may be subject to claims of the settlor's creditors, costs of administration of the estate, the expenses of the settlor's funeral, and any statutory allowances to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances. The official comments to the UTC further provide that "in accordance with traditional doctrine, the assets of the settlor's probate estate must normally first be exhausted before the assets of the revocable trust can be reached." Section 72-38-505, MCA, *Annotations*, Official Comments (2014).

¶14 Montana's statutory scheme governing estates and trusts further reinforces the UTC comments. Specifically, § 72-6-112(2), MCA, provides that a transferee of a nonprobate transfer remains liable to any probate estate of the decedent for statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances. Further subsections of § 72-6-112, MCA, indicate that our statutory scheme distinguishes between probate estates, as used in chapters 1 through 5, and nonprobate assets, as used in chapter 6. Section 72-6-112(1) defines a nonprobate transfer as:

> a valid transfer effective at death, other than a transfer of a survivorship interest in a joint tenancy of real estate, by a transferor whose last domicile was in this state to the extent that the transferor immediately before death had power, acting alone, to prevent the transfer by revocation or withdrawal and instead to use the property for the benefit of the transferor or apply it to discharge claims against the transferor's probate estate.

Section 72-6-112(3), MCA, further provides the following order of liability for any insufficiency:

> (a) a transferee designated in the decedent's will or any other governing instrument, as provided in the instrument;
> (b) the trustee of a trust serving as the principal nonprobate instrument in the decedent's estate plan as shown by its designation as devisee of the decedent's residuary estate or by other facts or circumstances, to the extent of the value of the nonprobate transfer received or controlled;
> (c) other nonprobate transferees, in proportion to the values received.

¶15 Our statutory provision providing for abatement under the UPC supports the distinction further. Section 72-3-901(1), MCA, states the following:

> (1) Except as provided in subsection (3) and except as provided in connection with the share of the surviving spouse who elects to take an elective share, shares of distributees abate, without any preference or priority as between real and personal property, in the following order:
> (a) property not disposed of by the will;
> (b) residuary devises;
> (c) general devises;
> (d) specific devises.

Thus, § 72-3-901(1), MCA, provides that shares of a distributee of an estate abate in connection with a spouse who elects to take an elective share. In this context, a "distributee" is defined as

> any person who has received property of a decedent from the decedent's personal representative other than as a creditor or purchaser. A testamentary trustee is a distributee only to the extent of distributed assets or increment to distributed assets remaining in the trustee's hands. A beneficiary of a testamentary trust to whom the trustee has distributed property received from a personal representative is a distributee of the personal representative. For purposes of this provision, 'testamentary trustee' includes a trustee to whom assets are transferred by will, to the extent of the devised assets.

Section 72-1-103(14), MCA.

7

A testamentary trust, as considered by § 72-1-103(14), MCA, is a trust created under a will and therefore would not include *inter vivos* trusts created during the settlor's lifetime.

¶16 Here, Linda correctly points out the word "trust" is included in the definition of "estate" provided by § 72-1-103(15), MCA. Linda further argues, in essence, that because the statutory definition of "estate" includes trusts, Douglas's estate necessarily *must* include the Trust. Lux contends that Linda's definition of estate ignores the statutory scheme and misconstrues the context of the word "trust" in § 72-1-103(15), MCA. We agree with Lux. The statutory scheme governing estates and trusts does not support Linda's argument. First, the plain language of the statutory definition provides the scope of its application. As § 72-1-103(15), MCA, indicates, the definition of "estate" includes the property of the decedent, trust, or other person *whose affairs are subject to chapters 1 through 5*. The Trust is not subject to chapters 1 through 5. The portion of the Trust that became irrevocable upon Alyce's death is governed by the UTC, while the portion that remained revocable upon Douglas's death is subject to the UTC and chapter 6 of Title 72, which governs nonprobate transfers. The Trust then, simply cannot fall within the definition of "estate" as Linda suggests.

¶17 Second, and notwithstanding this distinction, in some instances, nonprobate assets *may* be reached to satisfy claims against the estate. However, the statutory language of §§ 72-6-112 and 72-38-505(1)(c), MCA, plainly provides that nonprobate assets may *only* be reached when and to the extent the probate estate is insufficient to satisfy claims and allowances. The probate estate *must* be insufficient for those provisions to apply. Absent this prerequisite, nonprobate assets remain untouchable to satisfy claims. For the purposes

8

of our analysis here, we incorporate our conclusion in Part 2, *infra*, and conclude the estate is sufficient to satisfy Linda's statutory allowances through the abatement of her specific devises. Sections 72-6-112 and 72-38-505(1)(c), MCA, have no application here.

¶18 Finally, the abatement statute set forth in § 72-3-901, MCA, does not apply to the Trust. This statute applies to testamentary trusts created under a will, not *inter vivos* trusts. The Trust was created during Douglas's lifetime and accordingly, is an *inter vivos* trust. This distinction results in the Trust being governed by the UTC, not chapters 1 through 5 of Title 72, MCA. The Trust is not a distributee as considered by § 72-1-103(14), MCA.[3] Thus, the Trust falls outside the scope of § 72-3-901, MCA, and cannot abate to satisfy Linda's statutory allowances.

¶19 In sum, Linda is correct that the definition of estate includes "trust." However, we construe the entire statutory scheme to evaluate the context and to avoid ascribing too much importance to one term in a manner inconsistent with its accompanying words. *See Yates*, 574 U.S. at 543, 135 S. Ct. at 1085. The District Court correctly concluded the Trust was a nonprobate asset that could not be used to satisfy Linda's statutory allowances.

¶20 *2. Whether the District Court erred when it determined the probate estate was sufficient to satisfy Linda's statutory allowances through the abatement of her specific devises.*

¶21 Linda contends abatement only applies if the estate lacks sufficient funds to pay all claims and that, if the estate includes the Trust as she argues, there is sufficient property to

---

[3] *Amicus* notes that the Trust could be a distributee and thus subject to abatement to the extent that it received assets from the pour-over Will. However, the assets at issue here are those which the Trust owned prior to Douglas's death.

9

pay all claims and accordingly no need to abate Linda's devises. The estate argues that only non-Trust assets are subject to estate and spousal claims and the specific devises to Linda must abate to satisfy her statutory allowances.

¶22 The general provisions governing probate administration provide that "[t]he power of a person to leave property by will and the rights of creditors, devisees, and heirs to the person's property are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates." Section 72-3-101(1), MCA. These general provisions further provide that, at a person's death, their real and personal property "devolves to the persons to whom it is devised by the decedent's last will . . . subject to homestead allowance, exempt property, and family allowance, to rights of creditors, elective share of the surviving spouse, and to administration." Section 72-3-101(2), MCA.

¶23 The purpose of statutory allowances such as the exempt property, homestead, and family allowances is to "ensure that a surviving spouse was not left penniless and abandoned by the death of a spouse." *In re Estate of Martelle*, 2001 MT 194, ¶ 16, 306 Mont. 253, 32 P.3d 758 (citations omitted). We have previously recognized these allowances are "absolute" entitlements for the surviving spouse. *In re Estate of Martelle*, ¶¶ 20, 37. We liberally construe the allowances to effectuate their purpose of "protect[ing] the surviving family of the decedent." *In re Estate of Martelle*, ¶ 26. In *Martelle*, we concluded that the "sole statutory condition" for the receipt of the homestead allowance is to "survive the decedent by 120 hours." *In re Estate of Martelle*, ¶ 22.

¶24 Notwithstanding our holding in *Martelle*, § 72-2-415, MCA, provides guidance on the sources to fund these statutory allowances. This section provides that "[i]f the estate is

10

otherwise sufficient, property specifically devised may not be used to satisfy rights to homestead allowance or exempt property." Section 72-2-415(1), MCA.

¶25 Abatement applies when insufficient assets exist in the probate estate to satisfy all expenses and disbursements. *In re Estate of Barber*, 239 Mont. 129, 138, 779 P.2d 477, 483 (1989). Montana's abatement statute is set forth in § 72-3-901, MCA, which provides, pertinently, the following order of priority for abatement:

> (1) Except as provided in subsection (3) and except as provided in connection with the share of the surviving spouse who elects to take an elective share, shares of distributees abate, without any preference or priority as between real and personal property, in the following order:
> (a) property not disposed of by the will;
> (b) residuary devises;
> (c) general devises;
> (d) specific devises.

Limited exceptions apply to the statutorily mandated abatement order. First, a surviving spouse who elects to take an elective share operates as an exception to abatement. Section 72-3-901(1), MCA. Second, if the will, testamentary plan, or express or implied purpose of the devise would be defeated by the order of abatement in subsection (1), the shares abate as necessary to give effect to the testator's intent. Section 72-3-901(3), MCA.

¶26 Relying on our holding in *Martelle*, Linda contends that her statutory allowances are an absolute right that takes priority over all other claims against the estate. We distinguish *Martelle* from the instant case. In *Martelle*, the Court addressed the issue of whether a surviving spouse was entitled to a homestead allowance *in addition to* residential property received by right of survivorship. *In re Estate of Martelle*, ¶ 3. Analyzing this issue, the Court concluded a surviving spouse was entitled to the homestead allowance as

11

a matter of law. *In re Estate of Martelle*, ¶ 37. Implicit in this analysis, and seemingly uncontested in *Martelle*, was that the probate estate in *Martelle* was sufficient to satisfy the homestead allowance. In contrast, the issue here hinges on the sufficiency of the probate estate to satisfy the statutory allowances. If the estate is insufficient, specific devises may abate pursuant to § 72-3-901, MCA.

¶27 Douglas's estate consists entirely of personal property devised to Linda. Linda remains entitled to the statutory allowances totaling $57,750, without her specific devises abating, so long as the estate is solvent. As of August 2020, the estate has been rendered insolvent in the amount of $5,807.50. Accordingly, the abatement analysis under § 72-3-901, MCA, is invoked.

¶28 Douglas died testate. The only assets subject to estate administration consist of tangible personal property specifically devised to Linda. None of the exceptions to abatement provided for in § 72-3-901, MCA, apply here. Linda withdrew her petition for an elective share. Likewise, neither the Will nor the Trust contain a provision addressing abatement, and the record contains no evidence that Douglas's intention was contrary to the statutory order of abatement. No intestate assets exist, rendering § 72-3-901(1)(a), MCA, inapplicable. No assets subject to the residuary clause of the Will exist, rendering § 72-3-901(1)(b), MCA, inapplicable. Section 72-3-901(1)(c), MCA, does not apply, as there are no general devises. The only assets available for abatement consist of the tangible personal property specifically devised to Linda and subject to abatement under § 72-3-901(1)(d), MCA. Accordingly, these specific devises must abate as necessary to satisfy Linda's statutory allowances.

12

¶29 Of course, we note the Trust may still be subject to the claims, costs, expenses, and statutory allowances of the settlor in limited circumstances. However, the statutory language makes clear that the settlor's probate estate *must* be inadequate for those circumstances to arise. Here, the probate estate remains sufficient to satisfy Linda's allowances through the abatement of her specific devises. Accordingly, the District Court did not err when it concluded that Linda's specific devises must abate to satisfy her statutory allowances.

¶30 *3. Whether the District Court abused its discretion by denying Linda's motion to remove Lux as personal representative.*

¶31 Linda contends that, given the fractured nature of her relationship with Lux and the rest of the family following Douglas's death, the District Court erred when it denied her Petition to remove Lux as personal representative.

¶32 M. R. App. P. 6(4)(a) provides that, in estate, guardianship, and probate matters, an order granting or refusing to grant, or revoking or refusing to revoke, letters testamentary or of administration or guardianship is considered final, and a failure to immediately appeal results in a waiver of the right to appeal. In civil cases, a party must file a notice of appeal with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the appeal is taken. M. R. App. P. 4(5)(a)(i).

¶33 Linda's Notice of Appeal, filed on December 31, 2020, designates one issue for appeal: the District Court's Order entered on December 1, 2020. Linda's Notice of Appeal on the Order was timely filed. The District Court's order denying Linda's Petition was filed on October 28, 2020. The Petition sought to revoke Lux's letters of administration.

13

Linda failed to appeal the order denying her Petition within 30 days and raises the issue for the first time in her opening brief. The issue was not properly preserved for appeal, and we decline to address the merits.

**CONCLUSION**

¶34 The District Court correctly concluded Trust assets are nonprobate assets and not part of the probate estate. The District Court further correctly concluded that because the probate estate was insufficient to satisfy Linda's statutory allowances and no other property or devises are available, Linda's specific devises must abate and be used to satisfy the allowances. The District Court's order is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices

14